ERNESTINE M. ADAMS, VALENA T. BRIGGS, EMMET BYRNE, OSWALD
E. DAVIES, FREDERICK W. DIENER, DONALD B. HILLIKER,
MILDRED A. HILLIKER, CARL E. KASTNER, H. LORENE KINGS-
LEY, WELLES V. MOOT, JR., HOWARD L. NICHOLSON, THEODORE
PETERS, ESTHER T. SAHLIN, and FRANK J. SINDELE,
Petitioning Stockholders,

*vs.*

R. C. WILLIAMS & COMPANY, INC., a New York Corporation,
Defendant.

MILTON W. AMSTER, ANTHONY BACHETTI, BETTY BOLOGNINI,
RINALDO BOLOGNINI, MARIO CALAMAI, EMELIA CALAMAI,
HENRY J. DELAY, ELSIE C. DYE, ROBERTS E. FULLER, LASSER
BROTHERS, JESSICA LOTZ, JESSIE M. MACKENZIE, JEAN C. MOL-
LITZ, JOSEPH R. REILLY, TWEEDY BROWNE & REILLY, and
MITCHEL J. VALICENTI,
Petitioning Stockholders,

*vs.*

R. C. WILLIAMS & COMPANY, INC., a New York Corporation,
Defendant.

*New Castle, January 25, 1960.*

*Andrew B. Kirkpatrick, Jr.,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for petitioning stockholders in Civil Action No. 978.

*Arthur J. Sullivan* of Morris, James, Hitchens & Williams, Wilmington, for petitioning stockholders in Civil Action No. 993.

*Richard F. Corroon* of Berl, Potter & Anderson, Wilmington and *Thomas W. Kelly* and *Clifford B. Storms* of Breed, Abbott & Morgan of New York City for defendant R. C. Williams & Co., Inc.

SEITZ, Chancellor: This is the decision on the exceptions of certain stockholders ("stockholders") and the resulting corporation ("defendant") to an appraiser's final report determining the value of shares held by stockholders dissenting from a merger.

Old Judge Foods Corporation ("Old Judge") was merged into R. C. Williams & Co., Inc., the defendant herein, effective December 9, 1957. The dissenting stockholders held only the $25 and the $10 par cumulative convertible preferred shares of Old Judge. It is tacitly agreed that differences between the two classes can be ignored for the purpose of disposing of the present exceptions.

The appraiser fixed the value of the $25 par preferred of Old Judge at $9.71 per share and fixed the $10 par preferred at $3.88 per share. The stockholders say that such value should have been $15

and $6, respectively, while the defendant says the values should have been $4.49 and $1.79 respectively.

The stockholders claim that the appraised value must be at least the par value of the shares defendant exchanged for their stock pursuant to the terms of the merger.

Under the terms of the merger the defendant, a New York corporation, issued six-tenths of a share of its previously issued $25 par stock as full paid and non-assessable in exchange for each share of the Old Judge $25 preferred and issued 24/100 per cent of its new $25 par stock for each share of the Old Judge $10 preferred. Moreover, by a side agreement, defendant's parent offered to buy in a portion of the new $25 stock issued by the defendant in the merger at a price of $25 per share. Thereafter the defendant increased its own capital account by $25 for each share of its $25 par stock issued in exchange for the Old Judge preferred. It also increased its asset account by an equivalent sum, entering the amount by which the overall issuance in its capital exceeded the book value of the Old Judge assets as "Excess of cost over net equities of companies acquired less amortization."

Defendant corporation, which is a New York corporation, contends that under New York law a corporation can in the course of a merger issue new shares for less than their par. It says that even if this is not so, the value fixed by the directors must be deemed to include elements of value resulting from the merger and thus involve a different standard from that binding on the appraiser. The appraiser in effect agreed with defendant.

The appraiser had a duty to determine the fair value of the particular shares of Old Judge at the merger date. Assuming that the directors of a New York corporation have an obligation in a merger case to obtain a value equivalent to the par value of the shares to be issued under the terms of a merger, it does not automatically follow that the par value of the shares issued reflect the fair value of the shares of the merged corporation exclusive of any value resulting from the proposed merger.

Looking solely at the going concern value of the stock of the merged corporation, it could well be that its per share fair value would

be either more or less than the par value of the shares issued therefor. From the point of view of the corporation resulting from the merger, the business acquired could have a value which it would not possess when viewed apart from the resulting corporation's overall operation. I take judicial notice of the fact that a corporation sometimes pays a premium to obtain a business which it feels will fit in with its needs or plans or which will give it a large loss to offset against profits for tax purposes. Whether the value of the stock of Old Judge, when compared with the value of the stock exchanged therefor, is so inadequate as to be actionable is of no concern to these stockholders.

I therefore conclude that, while relevant, the amount of the stock issued under the terms of the merger is not conclusive evidence of the value of the shares of the merged corporation. Viewed against the factors hereafter considered (e. g., earnings, market value), I think it is meaningless for our purposes. The exception on this ground is overruled.

In considering other exceptions of the parties it is pertinent to set forth the appraiser's tabulation of figures going to make up his final determination:

| Value Factor | Value Found | Weighting | Result |
|---|---|---|---|
| Asset | 17.96 | 30% | 5.38 |
| Market | 7.00 | 20% | 1.40 |
| Dividend or Yield Value | 5.50 | 25% | 1.37 |
| Earnings | 6.24 | 25% | 1.56 |
| Value per share of $25 par preferred | | | 9.71 |
| Value per share of $10 par preferred | | | 3.88 |

Both sides attack the earnings value as found by the appraiser. The stockholders say that it is too low and the defendant says there is none at all. The stockholders claim that one of the underlying errors committed by the appraiser was to treat the preferred stock for evaluation purposes as though it were a common stock. The appraiser did this because he felt that the cumulative preferred was so far in arrears that for all practical purposes it should be treated as common

in connection with the application of future earnings. I do not find it necessary to consider this factor in resolving the matter.

I return to the question of earnings. The net income or loss for each of the eleven years before the merger is as follows (losses are in parenthesis) :

| | |
|---|---|
| 1947 | $287,992.89 |
| 1948 | $153,157.45 |
| 1949 | $165,313.42 |
| 1950 | $123,964.60 |
| 1951 | $208,491.15 |
| 1952 | ($320,479.62) |
| 1953 | ($620,120.59) |
| 1954 | $ 4,507.69 |
| 1955 | ($1,413,356.50) |
| 1956 | ($587,796.34) |
| 1957 | $ 15,295.21 |

The operating profit or loss for each of those years is as follows (losses in parenthesis) :

| | |
|---|---|
| 1947 | $378,405.36 |
| 1948 | $151,333.79 |
| 1949 | $497,372.05 |
| 1950 | $508,841.10 |
| 1951 | $157,497.62 |
| 1952 | ($ 10,039.56) |
| 1953 | ($181,694.42) |
| 1954 | $114,248.56 |
| 1955 | ($605,912.52) |
| 1956 | $158,780.16 |
| 1957 | $103,618.61 |

It appears that the appraiser, in order to arrive at an average earnings figure to be employed in projecting future earnings, took only the two years immediately preceding the merger (1956 and 1957). He then eliminated from these years certain items which depressed the value for those years. From Old Judge's 1956 net loss of $587,796.34,

he eliminated a loss on coffee futures of $601,760.25, and thus came up with a net profit for 1956. He increased the net profit of $15,295 for 1957 by adding the sum of $105,000 representing administrative savings which he felt would be effected. The appraiser reached a $1.56 per share average earnings based upon his adjusted 1956 and 1957 figures.

The corporation takes violent exception to the treatment of some of those items by the appraiser in reconstructing the earnings for the two year period. I need not pass upon the propriety of this aspect of the matter because it appears that the appraiser limited himself to a two year period in determining average earnings for capitalization purposes. I think this was unwarranted. See *In re General Realty & Utilities Corp.*, 29 *Del.Ch.* 480, 52 *A.2d* 6. An important purpose behind the practice of taking the average of several years earnings for the purpose of capitalizing earnings is to balance extraordinary profits and losses. See Dewing, *Financial Policy of Corporations* (5th ed.), Page 376; and see *Sporborg v. City Specialty*, 35 *Del.Ch.* 560, 123 *A.2d* 121. Past experience represented by the actual figures are of prime importance. Compare *Cottrell v. Pawcatuck Corp.*, 35 *Del.Ch.* 309, 128 *A.2d* 225.

When the average net earnings are taken for the last six years before the merger they show a net loss. The same result is found for the eleven years before the merger. And of still greater importance, a loss is shown for these periods even when the appraiser's adjusted 1956 and 1957 figures are used.

One reason the appraiser limited himself to the two year period was because he felt that losses for the prior years arose from the unstable nature of the coffee market which he concluded had been stabilized. I do not believe that the so-called stabilization of the coffee market constituted a reason to choose only a two year period. After all, are we to assume stability is now assured for the future? I think not. Moreover, there are other negative factors which were reflected in Old Judge's relatively poor earnings picture. Thus, Old Judge was a small company organized in a highly competitive business and its position was deteriorating both physically and financially. From 1947 to 1957 its sales declined from $23 million to $10 million; its assets

from $11 million to $3 million. Its net worth declined even more drastically. Actual operating results for the last five years showed a loss of $410,960.

Apparently the appraiser felt that when the defendant in effect took over management through voting control some few months before the merger, it brought about a savings of about $130,000 a year. Even if this were so, and I doubt it, it did not justify the elimination of prior years in calculating average net income for capitalization purposes. Instead of taking a longer period to get a better picture of Old Judge's business, the appraiser attempted to eliminate elements which tended to present the true picture of this corporation.

■ Considering the net earnings for five or six years before the merger we find a loss instead of earnings. It follows that such a factor should not have been considered by the appraiser in arriving at the appraised value of the shares in question. The defendant's exception to its use is sustained. My conclusion renders it unnecessary to consider the correctness of the capitalization rate employed by the appraiser.

The court would add that there could of course be elements of value included in earnings which would be considered so unusual and isolated as to justify their elimination in calculating average earnings. However, I am satisfied that it would take a most unusual situation to justify the limiting of the average number of years to the short period employed by the appraiser. After all, if future prospects are brighter than those reflected by capitalized earnings, they can be reflected in the weight ultimately given the various value factors employed in arriving at the appraised value.

■ The appraiser found a dividend or yield value although neither side asked for it. The record shows that no dividends have been paid on the appraised shares for five years prior to the merger. Moreover, they are admittedly to be suspended for at least 7 or 8 years more. Despite this record the appraiser determined that the company would earn a net income of at least $143,000 per year, for the ensuing several years, all of which would be applied wholly to the payment of dividends after the capital deficit of over $800,000 was made good.

The appraiser then projected a dividend value based upon a theory, the soundness of which I need not consider. I say this because I am satisfied that the premise for his theory, viz., average earnings for the years immediately following the merger, cannot be supported. This being so, there can be no use of dividend or yield value to aid in finding the appraised value.

I next consider the market value factor. The stockholders contend that there was insufficient activity in the stock involved to justify the conclusion that a market price existed. The defendant accepts the appraiser's findings as to market value.

The stock here involved was traded over the counter. The available transfer records show that in 1956, some 55 individuals surrendered 8,808 shares for transfer while 26 different surrenders were made by brokers involving 3,889 shares. In 1957, the transfer records show that 54 individuals surrendered 13,910 shares for transfer and 29 brokers surrendered 6,471 for transfer.

The number of $25 par value shares changing hands in 1956 amounted to 15% of the number issued. In 1957 the transfers involved the equivalent of 24% of the entire issue. I agree with the appraiser that the activity was sufficiently substantial to warrant reference to market value. The stockholders contend that the broker trading should not have been counted. Incidentally, the brokers' transfers involved somewhat less than 50% of the total transfers. Even assuming, as the stockholders argue, that the brokers may have traded the stock in order to make a market, I cannot believe that their overall activity was so disassociated with current market value as to justify the entire elimination of this factor. Indeed, it cannot be assumed on this record that broker purchases were to any large extent made for other than the benefit of customers. In any event, the question of the unreliability of the market price can be considered when market value is weighted in arriving at appraised value.

Under all the circumstances I conclude that the appraiser's finding of market value at $7 for the $25 par preferred at the crucial date was justified. The stockholders' exception on that ground is overruled.

I next consider the asset value factor. The stockholders contend that in arriving at asset value the appraiser overlooked certain elements of value. They say the per share asset value should have been $24.14 for the $25 preferred and $9.65 for the $10 preferred. The corporation contends that the asset value was substantially less than the $17.96 per share value reached by the appraiser. It claims that the asset value should have been no more than $11.93 per share.

This is a somewhat unusual case in that, apparently for reasons of economy, there was no physical appraisal made of Old Judge assets in connection with the merger. Nor was any appraisal provided the appraiser. The appraiser therefore took net book value of the assets attributable to the preferred at the date of the merger and made adjustments as to certain properties based upon what was deemed to be more pertinent evidence of asset value. Thus, he increased net book value as to such Old Judge properties by using what he concluded were the depreciated reproduction costs of such assets. Such depreciated reproduction cost values were obtained from the amounts of fire insurance policies carried on such assets by Old Judge and which defendant, in answer to an interrogatory, stated were based upon "estimated replacement costs less actual depreciation."

The defendant contends that these policies were not even admissible. It argues that they do not even truly reflect depreciated reproduction costs but only estimates. Indeed, defendant seems to treat the policies as though it were free to disown them. This it may not do. In view of the answer to the interrogatory the policies were admissible. The court is fully aware that the use of depreciated reproduction costs in determining going concern value is not the "end-all." See *Heller v. Munsingwear*, 33 *Del.Ch.* 593, 98 *A.2d* 774. This is more so, where the estimates were not supported by substantial evidence. Nevertheless, it was pertinent to the appraiser's determination of the asset value of a going concern.

The defendant seems to say that it was misled by the appraiser in the sense that it did not believe he would make any point of their failure to present evidence of asset value as such. It claims that when the appraiser submitted to this court the matter of having

such an appraisal, it was not suggested by the appraiser that he needed an appraisal of assets to assist him in arriving at his decision. See *Adams v. R. C. Williams & Co.*, 38 *Del.Ch.* 346, 152 *A.2d* 112. But says defendant, the appraiser is nevertheless apparently penalizing it for not providing such an appraisal.

The court has considered the various aspects of this problem and has come to the conclusion that it should accept the defendant's suggestion that the matter be referred back to the appraiser to receive additional evidence of asset value. I have reached this conclusion for several reasons. My principal reason arises from my conclusion that there is no earnings value factor here involved. Thus a prime indicia of value in most appraisal cases of this sort is eliminated. While the court realizes that it may not here approach the matter on the basis of liquidated value, it is evident that asset value is here of much greater significance than in the ordinary case. It was a substantial part of Old Judge's going concern value.

In referring the matter back to the appraiser, I desire to emphasize that I believe the parties should first stipulate to those assets as to which there is no value dispute. As to the other assets, I believe the parties should set forth their value contentions. The parties should then be given leave to offer evidence as to the value of the substantial assets as to which there is a significant difference of opinion. If the parties do not intend to offer professional assistance in any of the larger areas of dispute, I leave it to the appraiser to determine whether or not he desires to have assistance under the provisions of the statute. The court does point out that the potential cost involved should be considered by the appraiser in determining the course he adopts.

The court will enter an order constituting a preliminary determination of the matters decided, referring the matter back to the appraiser for hearing and determination of asset value, and making a new finding as to appraised value.

I know that the appraiser will adopt and enforce a plan which will result in a prompt adherence to this decision.

Present order on notice.

### *Supplemental Opinion*

This is the decision on the respective motions for reargument.

The stockholders seek reargument solely for the sake of arguing that the matter should not be referred back to the appraiser. For the reasons given in my opinion I think the motion is without merit. An additional reason is found in connection with my disposition of the corporation's motion. The stockholders' motion for reargument will therefore be denied.

The corporation's motion for reargument desires to avoid further difficulty before the appraiser by having the court make clear that its finding of zero earnings value is to be weighted by the appraiser in arriving at appraised value.

Subsequent to the filing of the court's opinion the parties advised the court that they had no desire to attempt to show an earnings value based upon any other type of evidence. Thus I need not discuss and the appraiser need not consider the matter except to proceed on the premise that there is a zero earnings value factor.

 Assuming the correctness of my finding that earnings value is zero, the stockholders do not contend that earnings value should not be weighed at all in arriving at appraised value. The court therefore instructs the appraiser to weight zero earnings value in arriving at appraised value. The court will not prejudge the weight to be given this factor but will leave that matter to the appraiser.

In view of the foregoing conclusions the corporation's motion for reargument will be denied.

An appropriate order should be presented by the corporation's counsel.