**Herbert MORRIS and Steven Nachman et al., Plaintiffs,**

**v.**

**Gerald BURCHARD et al., Defendants.**

**No. 69 Civ. 116(MP).**

United States District Court,
S. D. New York.

March 28, 1974.

Conboy, Hewitt, O'Brien & Boardman, New York City, for the Judgment Creditor (Grace Canadian Securities, Inc.)

## MEMORANDUM

POLLACK, District Judge.

The proposed judgment submitted by defendant Grace Canadian Securities, Inc., recommended by the Magistrate for signature by the Court in respect to the inquest taken herein pursuant to this Court's order of August 14, 1972, has been signed. The amount of the damages inserted therein has been fixed at a figure lower than that recommended by the Magistrate.

The Magistrate's report very aptly states that "The determination of damages is not without some difficulty" and "should be determined by considering all relevant factors including prior earnings, future prospects, and the nature of the business and uncertainties which attended it."

The problem is to ascertain the enterprise value of the brokerage business of Grace as of a date certain.

An examination of the cases and the texts, as well as some law review comments, reveals that several methods are commonly employed. The various values which may be placed on an enterprise include book value, liquidation or salvage value, net asset value, market value, replacement value, investment value, and "going concern" value. *See generally* Comment, Valuation of Dissenters' Stock under Appraisal Statutes, 79 Harv.L.Rev. 1453 (1966). This last value is the one we are concerned with here.

In measuring this value, we seek "to approximate the price that a willing buyer would pay for the company" by "[attempting] to predict its future income, primarily on the basis of its past earnings record." *Id.* at 1464.

There are two steps in the capitalization of earnings process: calculation of a representative annual earnings figure and choice of a capitalization ratio which reflects the stability and predictability of earnings of the particular corporation. (*Id.*)

On the question of computation, the general rule appears to be to average earnings over several years where possible, eliminating abnormalities where necessary. *Id.* at 1464–65; *accord,* Adams v. R. C. Williams & Co., 39 Del.Ch. 61, 158 A.2d 797 (Ch.1960); Perlman v. Feldmann, 154 F.Supp. 436 (D.Conn. 1957). It is to be recognized that "[t]he upward or downward trend of earnings may of course be more significant than the historical average." Comment, *supra,* at 1465. Essentially, Magistrate Jacobs appears to have followed this general principle in the instant case by averaging the earnings for the relevant period but excluding those years wherein the earnings bulged abnormally by the inclusion therein of the proceeds of the Canadian business thereafter deemed to have been illegal.

Once representative annual earnings are computed, the appropriate capitalization ratio must be applied thereto. On this point, most Courts (and law writers) rely heavily on 1 A. Dewing, The Financial Policy of Corporations 390–91 (5th ed. 1953). *See, e. g.,* Vandervelde v. Put and Call Brokers and Dealers Ass'n, 344 F.Supp. 118, 150–151 (S.D. N.Y.1972). Dewing creates seven categories and assigns a capitalization ratio to each. Number seven appears to be most apposite herein:

Personal Service businesses. They require no capital, or at most a desk, some envelopes, and a few sheets of paper. The manager must have a special skill coupled with an intensive and thorough knowledge of his subjects. The earnings of the enterprise are the objective reflection of his skill; and he is not likely to be able to create "an organization" which can successfully "carry on" after he is gone. He can sell the business, including the reputation and the "plan of business," but he cannot sell himself, the only truly valuable part of the enterprise— 100%, a value equal approximately, to the earnings of a single year.

The Harvard Law Review has observed that "[t]he lowest multiplier is probably realistic in the case of the vulnerable firm which may soon cease to exist. New enterprises also represent greater risks, calling for the use of low multipliers." Comment, *supra,* at 1467. Although it is often suggested that the Dewing multipliers be updated to allow for the lapse of two decades since their most recent publication, Marks v. Wolfson, 41 Del.Ch. 115, 188 A.2d 680, 686 n. 7 (Ch.1963); D. Herwitz, Business Planning 18–19 (1968), this is frequently not done. Levin v. Midland-Ross Corp., 41 Del.Ch. 276, 194 A.2d 50 (Ch. 1963). Whatever the merits of that argument as to industrial companies, there appears to be nothing to suggest its application to Dewing's seventh category.

In the present case it appears that the Magistrate has correctly computed representative annual earnings. However, applying a capitalization rate appropriate to the particular business here involved, and making allowances for both the high risk factor involved in the business engaged in by Grace and the payment by Grace in settlement of the class claims, appears to result in total damages of $200,000, which is the amount that has been inserted in the judgment.