98 A.2d 774 (1953)
HELLER et al.
v.
MUNSINGWEAR, Inc.
Court of Chancery of Delaware, New Castle.
July 23, 1953.
*775 Clarence W. Taylor (of Hastings, Stockly & Walz), Wilmington, and Ben W. Palmer, Minneapolis, Minn., for Leonard Heller, Minnie Meyers and Henry L. Meyers, executors of Simon Meyers, deceased.
Aaron Finger (of Richards, Layton & Finger), of Wilmington, for David Kabaker and A. L. Stamm & Co.
William Poole (of Berl, Potter & Anderson), Wilmington, and Paul Christopherson and George D. McClintock, Jr. (of Faegre & Benson), Minneapolis, Minn., for defendant.
SEITZ, Chancellor.
This is the decision on exceptions to the appraiser's report fixing the value of the shares of certain stockholders who dissented from the terms of a merger and sought an appraisal under what is now 8 Del.C. § 262.
By statutory merger Munsingwear, Inc., absorbed Vassar Company. The holders of 4,400 shares of Munsingwear stock dissented from the merger and became entitled to an appraisal. After prolonged proceedings the appraiser determined the value of each share of stock to be $23.20. The dissenting stockholders filed no exceptions to the appraiser's report but Munsingwear filed numerous exceptions.
Before considering those exceptions it might be well to describe Munsingwear's business generally. Munsingwear is an old established corporation engaged in the manufacture and sale of underwear, sleepingwear, hosiery and foundation garments. Its principal plant is in Minneapolis, Minnesota. During 1950 it did a gross business of about $25,000,000. In 1950 about 40% of its business was in so-called staple goods with the balance in style goods. Munsingwear is in a highly competitive industry and the industry in general is highly volatile sales-wise. Munsingwear's management is considered good but its working capital picture has not been too impressive.
By way of introduction to defendant's exceptions I pause to point out that it it unnecessary to enter into a protracted discussion of the applicable legal principles because they are reviewed by the Supreme Court in Tri-Continental Corp. v. Battye, 31 Del.Ch. 523, 74 A.2d 71. The shares must be valued on a going concern basis.
Munsingwear's exceptions first raised the following question:
"Whether asset value was $46.57 per share (being book value adjusted to reflect depreciated reproduction cost of fixed assets as appraised for insurance purposes) as found by the Appraiser, or $28.58 per share (being book value adjusted to reflect depreciated historical cost of fixed assets) as contended by Munsingwear."
The appraiser arrived at his $46.57 per share value by starting with an unchallenged *776 book value of $28.16 per share based on inventory and other ledger assets. He increased the value by $18.41 per share, representing the per share value of the depreciated reproduction cost of fixed assets including machinery as estimated by the corporation for insurance purposes. He thus arrived at his net asset figure of $46.57.
Munsingwear first claims in effect that the asset value of the so-called fixed assets should have been based on depreciated original cost. I cannot agree. The appraiser was seeking to arrive at the per share asset value of the stock. It is apparent that the use of depreciated original cost to determine asset value, as contended for by Munsingwear, would be almost meaningless because of the lapse of time. While original value may be a convenient figure for certain purposes, it hardly reflects present asset value and that is what the stockholder is entitled to have considered in arriving at the going concern value of his stock. For appraisal purposes at least, it seems to me that the appraiser must employ figures showing the current value of the assets if he decides that asset value is to be given independent weight. See Jacques Coe & Co. v. Minneapolis-Moline Co., 31 Del.Ch. 368, 75 A.2d 244. In arriving at current worth the appraiser is entitled to hear or seek evidence as to its reproduction costs and the other factors which influence current worth. Yet I do not suggest that in every appraisal case a physical appraisal of every asset is necessarily required.
Munsingwear's other grievances under this question appear to be that the insurance appraisal is no evidence of the market or commercial value of the fixed assets and that it fails to make allowance for obsolescence. Munsingwear claims that there is no necessary reasonable relationship between reproduction costs and the market or commercial value of the fixed assets. I agree, but that does not solve the problem. I say this because we must approach this problem from the going concern point of view, not liquidation. While the appraisal was not conclusive, it certainly was admissible as reflecting the current value of the fixed assets actually being used by Munsingwear in its going concern. See 1 Bonbright, Valuation of Property, pp. 169-170.
As to the failure of the appraiser to reduce asset value based on replacement cost because of obsolescence and related factors, I can only say that the record reveals conflicting and fragmentary evidence on the so-called obsolescence factor. Moreover, obsolescence is to an extent reflected in the depreciation taken in this case. I conclude that the state of the record warranted the appraiser in refusing to reduce the fixed asset figure because of the obsolescence factor. Moreover, later in this opinion the court lowers the weight given to asset value by the appraiser. This reduction can be said to reflect a possible obsolescence factor.
Munsingwear also claims that the appraiser improperly gave weight to several other items such as patents and trademarks. The appraiser did not give independent weight to those items. While he considered them in connection with the value factors mentioned and the weight to be given, I find no error in that approach.
Munsingwear seems to suggest in its brief that the appraiser refused to admit its tendered evidence as to the current value of the fixed assets. The short answer is that I do not find any place in the record where the appraiser so refused. In arriving at his decision the appraiser properly declined to use the fragmentary evidence of sales value adduced by Munsingwear.
I concur in the appraiser's conclusion that the asset value was $46.57 per share and exceptions directed to this factor are overruled.
Munsingwear's exceptions next raise the following question:
"Whether earnings value should be arrived at by capitalizing the five year average net earnings with a multiplier of 7 as fixed by the Appraiser, or with a multiplier of 5 as contended by Munsingwear."
As this court pointed out in Jacques Coe v. Minneapolis-Moline, supra, if *777 the multiplier employed by the appraiser is within the range of reason the court will adopt it as its own. I have reviewed the evidence and while the use of the multiplier 7 might be considered as somewhat optimistic, I find it within the range of reason and therefore conclude that it was properly used. Exceptions directed to this factor are overruled.
The third and fourth questions raised by Munsingwear may be treated together because they in effect charge the same error. They are:
"Whether the weightings assigned to the various elements of value by the Appraiser are correct, or give excessive recognition to asset value and inadequate recognition to market value and earnings value as contended by Munsingwear."
"Whether the value of $23.20 per share finally arrived at by the Appraiser is correct, or is excessive as contended by Munsingwear."
The mathematical basis for the appraiser's conclusion is set forth in the following chart:

 Weight
 ------
Asset Value per share  $46.57 @ 30%  (3) $139.71
Market Value " "  14.00 @ 25%  (2.5) 35.00
Earnings Value " "  11.97 @ 30%  (3) 35.91
Dividend Value " "  14.28 @ 15%  (1.5) 21.42
 _______
 10 $232.04
 -------
 $ 23.20

The most cursory examination of the per share value arrived at by the appraiser reveals that with the exception of asset value the values assigned to the various elements are substantially less than the ultimate value fixed by the appraiser. While this is not conclusive it does raise a serious doubt when we consider that this is only the ordinary manufacturing corporation and there is no occasion to unduly emphasize asset value. Since going concern value is the test, it would seem to me that the placing of an undue emphasis on asset value would be to treat the matter, by indirection, as a liquidation. This, of course, is not permissible under our appraisal statute as construed by our courts.
Having in mind that this is the ordinary manufacturing corporation and considering the marked contrast between asset value and the other elements, I believe the appraiser's weighting of asset value at 30% is too high. I believe that the weighting of asset value at 20% would be proper. I feel that market value should be weighted at 30% and earnings value and dividend value each at 25%. These readjustments will give great consideration to earnings, dividends and market values. At the same time it will reflect asset value without unduly distorting the aggregate value figure. It must be kept in mind that the weightings are at best only guides and are not to be rigidly applied regardless of value consequences.
When the weightings are given as indicated by the court, we arrive at the following results:

 Weight
 ------
Asset Value per share  $46.57 @ 20%  (2) $93.14
Market Value " "  14.00 @ 30%  (3) 42.00
Earnings Value " "  11.97 @ 25%  (2.5) 29.93
Dividend Value " "  14.28 @ 25%  (2.5) 35.70
 _______
 10 $200.77
 -------
 $ 20.08

*778 This results in a per share appraised value of $20.08. When this figure is tested by market value, average earnings and yield it is somewhat high yet it gives recognition to the potential involved in the greater asset value and the other factors not given specific weight. Exceptions to the weights employed by the appraiser and to the appraisal value fixed by him are sustained to the extent they are reflected in this opinion.
I find the per share value of the common stock here appraised to be $20.08.
Order on notice.