William C. HORSFORD, Jr., and Mary
C. Horsford, heirs, Appellants,

v.

ESTATE of William C. HORSFORD,
Deceased, Appellee.

No. 2653.

Supreme Court of Alaska.

March 16, 1977.

Charles W. Hagans and Timothy M. Stone, Anchorage, for appellants.

Warren W. Matthews, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ and ERWIN, JJ.

RABINOWITZ, Justice.

This appeal presents questions concerning the appropriate method of allocating proceeds of a wrongful death case settlement between competing surviving statutory beneficiaries.

William C. Horsford died in a crash of an F27 aircraft at Iliamna Lake on December 2, 1968, leaving a widow, Dorothy (who was appointed administratrix of the estate), and two teenage children by a prior marriage, William, Jr. and Mary Horsford. In her representative capacity Dorothy sued Wien Consolidated Airlines and Fairchild-Hiller Corp. for damages resulting from the crash. In her complaint the administratrix advanced claims for damages grounded on Alaska's Wrongful Death (AS 09.55.580)[1]

1. AS 09.55.580 provides:

(a) When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury done by the same act or omission. The action shall be commenced within two years after the death, and the damages therein shall be such damages as the court or jury may consider fair and just, and the amount recovered, if any, shall be exclusively for the benefit of the decedent's husband or wife and children when he or she leaves a husband, wife or children, him or her surviving, or other dependants. When the decedent leaves no husband, wife or children surviving him or her or other dependents, the amount recovered shall be administered as other personal property of the deceased person but shall be limited to pecuniary loss. When the plaintiff prevails, the trial court shall determine the allowable costs and expenses of the action and may, in its discretion, require notice and hearing thereon. The amount recovered shall be distributed only after payment of all costs and expenses of suit and debts and expenses of administration.

(b) The damages recoverable under this section shall be limited to those which are the natural and proximate consequence of the negligent or wrongful act or omission of another.

(c) In fixing the amount of damages to be awarded under this section, the court or jury shall consider all the facts and circumstances and from them fix the award at a sum which will fairly compensate for the injury resulting from the death. In determining the amount of the award, the court or jury shall consider but is not limited to the following:

and survivorship (AS 09.55.570) statutes.[2] This litigation was settled for $350,000. The settlement was made in a lump sum, without any allocation between the widow and the two minor children of the decedent's prior marriage and without any allocation between the wrongful death action and the survival action. The superior court then approved the settlement, dismissed the suit, and reserved ruling upon the allocation questions.

Under Alaska's Wrongful Death Statute damages are required to be assessed according to the loss suffered by each statutory beneficiary. Our statute is silent as to whether or not the trier of fact should determine the loss suffered by each surviving beneficiary and then make a separate award for each, or calculate the loss suffered by each beneficiary, total such losses, and then enter a lump sum verdict.[3] Given the lack of statutory guidance, the superior court was confronted with the problem of determining the most equitable allocation of the settlement proceeds between the competing beneficiaries.

Dorothy Horsford, the widow and administratrix of the estate, proposed an allocation formula which was based on the pecuniary loss to each surviving statutory beneficiary, or what he or she could each reasonably expect to have received in support and other services from the deceased had he lived. This proposal was tendered by the administratrix in conjunction with her motion for distribution of the net proceeds of the settlement which at the time of the motion amounted to $225,864.35.[4] The motion was denied by the superior court and the question of the proper allocation set for an evidentiary hearing "to enable the court to determine from facts presented by the parties and the circumstances of the case what the most equitable distribution would be." Prior to the holding of the evidentiary proceeding, the superior court ruled that any portion of the settlement proceeds which were possibly attributable to the survival claim for relief[5] was de minimis, since the decedent was essentially killed on impact. After holding an evidentiary hearing, the superior court approved the administratrix's proposed method of distribution and the minor children brought this appeal.

Before the superior court the administratrix proposed an allocation formula which reflected the proportionate reasonable and significant pecuniary expectations of the widow and minor children had William Horsford not died. Under the allocation formula proposed by the administratrix, all the years which decedent's widow and minor children could reasonably have expected to receive significant benefits from the decedent are totalled. Each of the children

(1) deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to age thereof, that would have resulted from the continued life of the deceased and without regard to probable accumulations of what the deceased may have saved during his lifetime;
(2) loss of contributions for support;
(3) loss of assistance or services irrespective of age or relationship of decedent to the beneficiary or beneficiaries;
(4) loss of consortium;
(5) loss of prospective training and education;
(6) medical and funeral expenses.
(d) The death of a beneficiary or beneficiaries before judgment does not affect the amount of damages recoverable under this section.
(e) The right of action granted by this section is not abated by the death of a person named or to be named the defendant.

2. See n. 21 infra.

3. According to appellee, the lump sum verdict is the "prevailing practice." In support of this statement, appellee cites, in part, M. Ingraham, *Damages for Wrongful Death in Alaska*, 4 Alaska L.J. 113, 144–45 (1966).

4. After payment of court-approved costs and attorneys' fees, the net proceeds of the $350,-000 settlement amounted to $225,864.35.

5. The wrongful death action settlement agreement provided that the settlement amount ". . . includes all claims arising out of the death of William C. Horsford, including claims based on any wrongful death statute or survivorship statute or independent claims by the heirs. . . ." The settlement agreement itself did not specify what portion of the settlement, if any, was attributable to the survivorship action.

would receive benefits until he or she reached the age of majority, 19, under the formula. The widow's years of dependency were based upon the life expectancy of Mr. Horsford, since his life expectancy was for a period shorter than hers. The sum of all the years of dependency is then employed as the denominator, and the number of years each surviving statutory beneficiary could reasonably expect significant benefits to him or herself is used as the numerator, thereby creating a fraction for each beneficiary. The net proceeds of the settlement are then multiplied by each fraction and the results are the distributive shares of the settlement payable to each beneficiary. The formula, as applied, is shown as follows:

| Beneficiary | Years of Dependency | Percent | Distribution |
|---|---|---|---|
| Dorothy Horsford | 27.80 | 79 | $179,144.00 |
| Children (William Jr. & Mary) | 7.25 | 21 | 46,720.00 |
| Totals | 35.05 | 100 | $225,864.00 |

Since both the widow and the two minor children had received workmen's compensation benefits which the administratrix reimbursed to the compensation carrier from the settlement proceeds, each of the beneficiaries were not entitled to receive the full sums indicated by application of the formula. In addition, pursuant to stipulation, the minor children had received a total advance of $35,000 from the settlement proceeds, as had the widow. Thus, the actual payments ordered by the superior court, pursuant to the formula urged by the administratrix, were as follows:

Net proceeds of the wrongful death settlement     $225,864.00

Children:

$$\frac{7.25}{35.05} \times \$225,864.35 \qquad 46,720.00$$

Consisting of:

| | |
|---|---|
| Workmen's Compensation | 6,733.00 |
| Stipulated Advance | 35,000.00 |
| Disbursal from Remaining Fund | 4,987.00 |

Widow Dorothy Horsford:

$$\frac{27.80}{35.05} \times \$225,864.35 \qquad 179,144.00$$

Consisting of:

| | |
|---|---|
| Workmen's Compensation | 13,795.00 |
| Stipulated Advance | 35,000.00 |
| Disbursal from Remaining Fund | 130,349.00 |

In summary, the minor children were allocated a combined sum of $4,987, while the widow received $130,349 from the remaining funds under the formula which had initially been advanced by the administratrix and ultimately adopted by the trial court.

Appellants' primary contention in this appeal is that the superior court erred in

approving a method of distribution which was not in accord with Alaska's laws governing inheritance of intestate estates [6] and for the further reason that the allocation adopted was tied directly to the ages of the dependent minor children and was therefore contrary to the provisions of AS 09.55.-580(c)(1) of our Wrongful Death Act.[7] As to appellants' first contention, they assert that the ratio for distribution of the settlement proceeds in the instant case is precisely that ratio elucidated in AS 13.11.010(4) and AS 13.11.015(1). Assuming the applicability of these statutes, the settlement fund proceeds in the case at bar would then be divided one-half to the widow and one-half to the surviving children of decedent's prior marriage. These statutes governing intestate distribution are apposite in appellants' view since Alaska's Wrongful Death Act does not explicitly provide for the allocation of settlement proceeds among the various statutory beneficiaries.

Concerning the distributive formula which was adopted by the superior court, appellants argue that since this scheme is grounded on the age of majority, essentially as a cut-off point for benefits, the formula is contrary to the express language of AS 09.55.580(c)(1) of Alaska's Wrongful Death Act. That section provides for consideration of deprivation of pecuniary benefits to the beneficiaries without regard to their ages.

The administratrix in turn argues that the superior court determined its function was to ascertain what the most equitable distribution between the parties would be; that it held a hearing at which all parties were given an opportunity to present evidence as to this issue; that in apportioning the settlement proceeds the superior court was in a position analogous to that of the trier of fact in a wrongful death trial, and was therefore vested with a broad range of discretion in deciding the allocation issue. The administratrix specifically contends that use of the inheritance laws to determine distribution of the settlement proceeds would be unjust and inconsistent with the Wrongful Death Act. The administratrix further contends that the phrase "without regard to age," as used in AS 09.55.-580(c)(1),[8] means that an adult is not to be excluded outright from eligibility to receive wrongful death damages, but that the distribution formula proposed by the administratrix is based on "expectancy" of benefits by virtue of the legal and familial relationship of the decedent to his wife and children.

Concerning appellants' first contention, we have concluded that the superior court did not err in refusing to distribute the proceeds of the settlement in accordance with Alaska's laws of intestate succession. Analysis of the Alaska Wrongful Death Statute demonstrates that the legislature intended that damages in a wrongful death case are to be assessed according to the actual losses of each qualified surviving beneficiary.[9] It strikes us as illogical to

---

6. *See* AS 13.11.010(4) and 13.11.015(1). AS 13.11.010(4) provides:

> The intestate share of the surviving spouse is:
>
> . . . . .
>
> (4) if there are surviving issue one or more of whom are not issue of the surviving spouse, one-half of the intestate estate.

AS 13.11.015(1) provides:

> The part of the intestate estate not passing to the surviving spouse . . . or the entire intestate estate if there is no surviving spouse, passes as follows:
>
> (1) to the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, but if of unequal degree, then those of more remote degree take by representation

7. This subsection of AS 09.55.580(c) instructs that in fixing the amount of the award the court or jury shall consider but is not limited to the following:

> (1) deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to the age thereof, that would have resulted from the continued life of the deceased

8. *Id.*

9. In addition to a straightforward textual analysis which indicates this conclusion, see *Wien Alaska Airlines, Inc. v. Simmonds*, 241 F.2d 57, 58, 16 Alaska 670 (9th Cir. 1957); W. Prosser, Law of Torts 908 (4th ed. 1971).

infer that the legislature further intended that distribution of such damages was to be based on the fortuitous application of Alaska's laws controlling inheritance of intestate estates.[10] Our Wrongful Death Act explicitly provides for only one instance, namely, when there are no statutory beneficiaries, where the damages recovered are to be administered as part of the decedent's estate. More particularly, AS 09.55.580(a) provides in part that:

> When the decedent leaves no husband, wife or children surviving him or her or other dependents, the amount recovered shall be administered as other personal property of the deceased person . ..

In light of this provision we are in agreement with the appellee's position that "if the legislature had intended that wrongful death damages be distributed in all cases as if part of the decedent's estate, it would have said so." [11]

We now turn to the question of whether the superior court erred in adopting the distributive formula which the administratrix proposed. Given the lack of legislative direction in this area, we hold that the superior court did not err in concluding that allocation of the wrongful death settlement proceeds should be in proportion to the actual loss suffered by each surviving statutory beneficiary. We therefore hold that in determining awards under our Wrongful Death Act the trier of fact should make a separate award for each surviving beneficiary. Similarly, when confronted with allocation problems arising in the context of a settlement of a wrongful death claim the court should make the necessary allocation. In making allocations of wrongful death settlements under circumstances similar to those here involved, we approve the use of a formula whereby appropriate proportions can be arrived at by totaling the number of years of reasonably expectable dependency or loss suffered by all beneficiaries. This figure is to be used as the denominator and the proportionate share of each beneficiary is that fraction of the proceeds which is arrived at by using each beneficiary's individual years of reasonably significant loss or dependency as the numerator. Our approval of the trial court's adoption of the formula in question finds support in federal court decisions under the Federal Employers' Liability Act [12] and the Jones Act [13] as well as state court decisions applying wrongful death acts.[14]

Proceeding to the particular factual circumstances of this case, we are of the view, and so hold, that the superior court's

---

**10.** Appellee points out that under the appellants' theory,

> [a] totally dependent widow who has suffered great loss by the death of her husband and a totally independent adult child who has suffered no loss, would share equally.

**11.** *See also In re Estate of Johnson*, 213 N.W.2d 536, 538–39 (Iowa 1973); *Murphy v. Duluth-Superior Bus Co.*, 200 Minn. 345, 274 N.W. 515, 516 (1937); *In re Riccomi's Estate*, 185 Cal. 458, 197 P. 97 (1921).

Appellants' contention as to the applicability of Alaska's intestate succession statutes is related to their additional argument that a portion of the settlement funds are attributable to the survivorship claim for relief. Any survivorship damages would become part of the decedent's estate, and thus in the case at bar would be distributed under our laws of inheritance of intestate estates resulting in the widow receiving one-half of the funds and the other half going to the minor children. Appellants assert that by adopting the intestate succession statutes this court could avoid possible dilemmas for personal representatives who are confronted with the problem of allocating settlement proceeds between the survivorship and wrongful death damages in a given case. In the case at bar this potential dilemma is nonexistent as the superior court determined that no portion of the settlement proceeds were attributable to the survivorship claim for relief.

**12.** *Padgett v. Padgett*, 88 F.Supp. 630 (S.D.Fla. 1950); *Tumolo v. Reading Co.*, 52 F.Supp. 956 (D.N.J.1943).

**13.** *In re Southern S. S. Co.*, 135 F.Supp. 358, 363 (D.Del.1955); *Re Russo's Estate*, 33 Del.Ch. 598, 86 A.2d 369, 371 (1952).

**14.** *In re Giambertone's Estate*, 38 Misc.2d 784, 238 N.Y.S.2d 883, 884 (1963); *In re Lachman's Estate*, 208 Misc. 774, 147 N.Y.S.2d 769 (1955); *In re Kaiser's Estate*, 198 Misc. 582, 100 N.Y. S.2d 218, 220 (1950); and *Leeper v. Thornton*, 344 P.2d 1101 (Okl.1959).

application of the allocation formula was not in irreconcilable conflict with the "without regard to age" phraseology of AS 09.-55.580(c)(1). For we think there is an adequate rationale for, as well as flexibility embodied in, the formula to reconcile it with the provisions of AS 09.55.580(c)(1). Since the legal obligation to support children ordinarily terminates at approximately the age of majority and because the reasonable expectations of a child for pecuniary contributions from his parents terminates under ordinary circumstances at about the same time, the formula's employment as the years of significant damages for a child only those years between the age of the child at the time of his parent's death and the age of majority has a rational basis. On the other hand, if there is evidence of circumstances indicating a longer period of dependency or evidence furnishing a basis for finding a continued expectation of pecuniary contributions beyond the age of majority, then the formula can be adjusted or, if necessary, abandoned.[15]

Here our review of the record has led us to the conclusion that the superior court's findings of fact which supplied the foundational basis upon which the formula was applied are not clearly erroneous. More particularly, the superior court found in part that:

> The children have not suffered significant loss of prospective training and education or significant loss of assistance or services as the result of the death of William C. Horsford because they were not receiving substantial assistance, services, training or education from him prior to his death.

> Considering only the deprivation of the expectation of pecuniary benefits, Dorothy Horsford's loss of same in comparison to the loss to the children is greater than the ratio of loss which she proposes. Considering the non-pecuniary items of loss compensable under the Alaska wrongful death statute, loss of assistance or services, loss of consortium, and loss of prospective training and education, Dorothy Horsford's loss in comparison to the loss to the children is proportionately greater than the ratio of distribution which she proposes.[16]

William Horsford, Jr., in response to being asked what his expectations for future support were at the time of his father's death, stated:

> I guess the only thing I really expected is that it would continue as it had before. Whichever checks were required by whichever state law it was under. I don't know—the agreement. And whatever had been the case of birthdays. I think I expected that would just continue as it had been, I guess.

In addition the decedent's contributions to his children showed an irregular and infre-

---

15. At the time of the deceased's death, the children were 14 and 16 years of age. They were living in Missouri with their mother, the deceased's ex-wife, and had not seen their father for three and a half years. Under a provision of his divorce decree, the deceased was providing child support payments of $175 per month until the older child reached the age of 19, at which time the payments would be reduced to $100 per month, and when the younger child reached 19, the payments would stop altogether. The administratrix's formula utilized the remaining years that each of the children would receive support payments from the time of their father's death until they each reached the age of majority in determining their years of dependency. The fact that the decedent was legally obligated to provide a certain amount of support to his children until they reached the age of majority in this case affirms the general rule that parents support their children until they reach the age of majority.

16. The superior court also found that:

> The deceased came to Alaska in May of 1965 from St. Louis, Missouri. From May of 1965 until his death he did not see the children. Correspondence between the deceased and the children was sporadic and infrequent and they talked by telephone only a few times.

Introduced with the deposition of William Horsford, Jr. were approximately 23 letters and cards sent to him or both of the children by their father over a period of three and a half years. Most of the correspondence took place during the few months immediately after Mr. Horsford, Sr. left Missouri. The postmarks show that in the three years prior to his death, the decedent had sent a total of six cards or letters to his children.

quent pattern consisting only of small contributions for birthdays or Christmas.[17]

▮▮ Remaining are several contentions of the appellants which we have carefully reviewed and find to be without merit. First, appellants urge that the superior court committed error in applying the allocation formula by including the $35,000 received by the minor children pursuant to a stipulation with the administratrix. We find this contention devoid of merit. The superior court, in its interlocutory decision, referred to the $35,000 payment "as advancements upon their distribution share of the net remaining settlement . . . ."[18] We think this was an accurate characterization of the $35,000 received by the children and that it was entirely proper for the superior court to take this amount into consideration in determining an equitable allocation of the remaining settlement proceeds.[19] Secondly, appellants take the position that the superior court incorrectly attached some form of presumption to the correctness of the administratrix's proposed formula of allocation. Here our study of the record leads to the conclusion that the superior court did not impose an improper burden of proof on appellants or invoke a presumption against appellants' suggestion that the laws of intestate succession be adhered to in allotting the settlement proceeds. What the superior court did functionally was to indicate that the administratrix's suggested formula appeared sound, but nevertheless the court scheduled a hearing in order to afford the parties the opportunity of presenting legal arguments and evidence in support of their respective allocation theories. At the conclusion of the hearing the superior court found the administratrix's proposed method of distribution "to be fair and equitable under the facts of this case . . . ."[20]

▮ Appellants' final point in the appeal is that the superior court incorrectly determined that no portion of the total settlement should be attributed to the survivorship claim for relief.[21] We find no error here on the superior court's part for there is nothing in the record which indicates that any pain and suffering which

---

17. The superior court found in part that "The deceased's gifts to the children after May of 1965 were of negligible pecuniary value."

The record shows that the deceased had not contributed anything specifically for the education and training of the children, with one possible exception of one check for $50 which his ex-wife believed was for William Jr.'s high school tuition.

Although not necessary to the resolution of this appeal, we note our view that there is support in the record for the eight findings of fact.

18. As the result of their father's death, the children received some $22,000 in social security payments, nearly $7,000 in workmen's compensation benefits, and a $35,000 advance from funds from the wrongful death settlement.

19. Appellants' argument here is that:

The stipulation entered into by the parties clearly provided that 'this stipulation may not be used as an admission of fact as to how or according to what percentage the additional funds should be distributed' . . . A reasonable interpretation of the language used in the stipulation suggests that only funds remaining after the advanced distribution would be subject to the court's final order of distribution. Assuming, arguendo, that the court correctly applied the Administratrix's proposed method for distribution of the remaining settlement proceeds, the formula should have been applied only to those funds remaining after partial withdrawal of funds by the parties.

20. The trial court, in its findings, proceeded to articulate the facts upon which it concluded that the administratrix's formula was fair and equitable.

21. AS 09.55.570 (formerly AS 13.20.330), the relevant statute here, provides:

All causes of action by one person against another, whether arising on contract or otherwise, except those involving defamation of character, survive to the personal representatives of the former and against the personal representatives of the latter, but this shall not be construed so as to abate an action for a wrong where any party has died after the verdict or to defeat or prejudice the right of action given by AS 09.15.010. The personal representatives may maintain an action thereon against the party against whom the cause of action accrued, or, after his death, against his personal representatives.

William Horsford may have suffered was other than momentary.[22]

We thus conclude that the superior court's findings of fact, conclusions of law and order of distribution should be affirmed in all respects.

Affirmed.

ERWIN, Justice, dissenting.

Assuming, as the majority does, that the funds which are to be allocated in this case represent a wrongful death settlement, then I agree with the majority insofar as it holds that

[a]nalysis of the Alaska Wrongful Death Statute demonstrates that the legislature intended that damages in a wrongful death case are to be assessed according to the actual losses of each qualified surviving beneficiary.

Further, I am in agreement with the majority that

[I]n making allocations of wrongful death settlements . . ., we approve the [rule in its general outlines that] appropriate proportions can be arrived at by totaling the number of years of reasonably expectable dependency or loss suffered by all beneficiaries,

thereafter using that figure as a denominator in calculating each individual's percentage of the award.

However, I depart from the reasoning of the majority to the extent that it approvingly allows a presumption founded upon the father's legal obligation to support his children to control on the issue of "actual loss" when figuring the beneficiary children's reasonable expectable years of dependency or loss. To set such a presumption up even as a rebuttable one, which the majority does here, is unnecessary and hinders the function of what the court in fact should be undertaking, the ascertainment of actual loss on the part of the individual children. Further, to use the age of majority as a cut-off period, and to say that after this time the children should expect nothing in the way of support from their father, or that they after such time suffer no loss as the result of his wrongful death, is to fly squarely in the face of common sense and general human experience.

Experience tells us that often children who have been placed in the custody of one parent after a marital separation never have an opportunity to come to know the other parent until after such children have left the household of the custodial parent. Thus, to examine the relationship of the deceased with his children while they were living with the custodial mother, and to have the terms of that relationship control on the question of future loss, is to me illogical and arbitrary. It would seem much more probable that at the age of majority the children and father might come to know each other well for the first time, and accordingly the father's interest in his children would increase. Additional-

---

**22.** The superior court stated two reasons for its ruling that the survivorship portion of the settlement was insignificant.

All attorneys concede that the 'whole case' was settled without allocation as to survivorship action or wrongful death action. The children take the position that it was improper to settle the case in such a manner, as they claim that the funds realized from the settlement of the survivorship action should become assets of the estate and hence distributed under the probate code. The children's contention in this regard the court feels is without merit. It may very well be true that the decedent suffered substantial pain, suffering and mental anguish arising out of the accident in question but it is equally true that this pain, suffering, anguish and other ele-

ments that are normally connected with a survivor action came quickly and decisively to a tragic termination when the plane hit the ground. To allow the children to, in effect, collaterally attack the settlement which was entered into in good faith, at arms length, with the defendant in the wrongful death proceedings would effectively defeat and discourage the settlement of the cases of this nature.

The court is of the opinion that any portion of the total settlement that could be allocable to the survivorship portion of the action would be insignificant in terms of the entire settlement amount. For the purpose of this motion the court will consider the fund remaining to be distributed as arising from the wrongful death proceeding.

ly, other considerations not present before emerge at the age of majority. Possible educational pursuits by the children which before were not considerations might well interest the father, and his participation in financially assisting the child cannot be ruled out.

I am also troubled by the fact that today's holding has set up the presumption of majority as a vehicle to cut off dependency insofar as the children are concerned, but has set up no corresponding presumption for the wife. Perhaps statistical evidence should be utilized in calculating the wife's chances of remarriage, and thus the loss of her legal right to dependency. Such evidence could then be utilized as a presumption as rational, I believe, as the presumption of majority operative against the children.

Finally, to allow the presumption to be adjusted upon a showing of the children of

> evidence of circumstances indicating a longer period of dependency or evidence furnishing a basis for finding a continued expectation of pecuniary contributions beyond the age of majority

is to unfairly place on the children a burden which cannot be realistically met. How could a child of two years demonstrate the intention of a deceased parent to financially participate in an educational plan which is to occur sixteen years later? What evidence of circumstances could demonstrate such an intention?

On the facts before us the court has held that the existence of a valid four-month marriage conclusively demonstrates the deceased's intentions to support his current wife, yet the majority cuts off any expectancy by his two children upon their reaching the age of legal majority. Such an apportionment of the deceased's estate to his immediate family seems to me to be justified nowhere in the record.[1]

1. Appellee herein received social security benefits almost equal to those received by the children, workmen's compensation benefits of

$13,795 which must likely be repaid, a cash advance of $35,000, and final payments of $130,349.