**STATE of Alaska, DEPARTMENT OF FISH AND GAME, Appellant,**

v.

**Jeremiah KACYON, beneficiary of Randall Kacyon (Deceased), and the Alaska Workers' Compensation Board, Appellees.**

No. S–9433.

Supreme Court of Alaska.

Oct. 5, 2001.

---

**10.** *See Coleman,* 968 P.2d at 573–74.

**11.** *See id.* at 573.

**12.** *Id.* (citations omitted).

Kristin S. Knudsen, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellant.

John S. Hedland, Amy L. Vaudreuil, Hedland, Brennan, Heideman & Cooke, Anchorage, for Appellees.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

### I. INTRODUCTION

Alaska Statute 23.30.015(g) provides that when an employee's representative recovers damages in a suit against a third party, the representative must reimburse the employer for workers' compensation benefits the employer has paid.[1] The "excess" recovery may

---

1. Because a number of the subsections of AS 23.30.015 are relevant to this appeal we set out all of the relevant subsections at this point as they existed at the time this case was decided by the Workers' Compensation Board.

(a) If on account of disability or death for which compensation is payable under this chapter the person entitled to the compensation believes that a third person other than the employer or a fellow employee is liable for damages, the person need not elect whether to receive compensation or to recover damages from the third person.

(b) Acceptance of compensation under an award in a compensation order filed by the board operates as an assignment to the employer of all rights of the person entitled to compensation and the personal representative of a deceased employee to recover damages from the third person unless the person or representative entitled to compensation com-

be retained by the personal representative but it must be credited against the employer's obligation to make compensation payments in the future. But the employer must pay its pro rata share of the representative's costs and attorney's fees as measured by both the reimbursement for past payments that the employer receives and the credit for future payments that the employer is relieved from paying.[2] Subsection (h) of .015 provides that if a personal representative compromises without the employer's consent a third-party claim for an amount which is less than past and future compensation payments, future compensation benefits are forfeited. This case involves the interplay between these subsections which is created when a settlement is made for an amount greater than past and future compensation payments but an allocation is made to one beneficiary in an amount less than the total benefits the beneficiary would receive from the employer.

In the present case a personal representative settled a third-party action for a sum in excess of possible past and future compensation benefits, took the position that the employer was entitled to reimbursement for compensation payments paid and a discharge of any future obligation to pay compensation, less pro rata costs and attorney's fees and, with court approval but without the consent of the employer, allocated a settlement share to a minor beneficiary of the deceased that was less than the future compensation due from the employer to the beneficiary. The employer sought to invoke the forfeiture provisions of subsection (h). The Workers' Compensation Board held that subsection (h) did not apply because the allocation was court approved and thus held the employer responsible to pay full benefits once the credited amount was exhausted. We hold that this was error because the fact that a settlement allocation is court approved does not mean that it is not the result of a "compromise with a third person" as that term is

mences an action against the third person within one year after an award.

. . . .

(e) An amount recovered by the employer under an assignment, whether by action or compromise, shall be distributed as follows:

(1) the employer shall retain an amount equal to

(A) the expenses incurred by the employer in respect to the action or compromise, including a reasonable attorney fee determined by the board;

(B) the cost of all benefits actually furnished by the employer under this chapter;

(C) all amounts paid as compensation and second-injury fund payments;

(D) the present value of all amounts payable later as compensation (present value to be computed from a schedule prepared by the board), and the present value of the cost of all benefits to be furnished later under AS 23.30.095 (as estimated by the board), the amounts so computed and estimated to be retained by the employer as a trust fund to pay compensation and the cost of benefits as they become due and to pay any finally remaining excess sum to the person entitled to compensation or to the representative; and

(2) the employer shall pay any excess to the person entitled to compensation or to the representative of that person.

(f) Even if an employee, the employee's representative, or the employer brings an action or settles a claim against the third person, the employer shall pay the benefits and compensation required by this chapter.

(g) If the employee or the employee's representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A)-(C) of this section insofar as the recovery is sufficient after deducting all litigation costs and expenses. Any excess recovery by the employee or representative shall be credited against any amount payable by the employer thereafter. If the employer is allocated a percentage of fault under AS 09.17.080, the amount due the employer under this subsection shall be reduced by an amount equal to the employer's equitable share of damages assessed under AS 09.17.080(c).

(h) If compromise with a third person is made by the person entitled to compensation or the representative of that person of an amount less than the compensation to which the person or representative would be entitled, the employer is liable for compensation stated in (f) of this section only if the compromise is made with the employer's written approval.

. . . .

(j) Notice of the commencement of an action against a third party shall be given to the board and to all interested parties within 30 days.

**2.** See *Stone v. Fluid Air Components of Alaska*, 990 P.2d 621, 624–25 (Alaska 1999); *Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525, 526 (Alaska 1976).

used in subsection (h). But we also hold that under the facts and circumstances of this case the "compromise with a third person" that is governed by subsection (h) is the total settlement and that this discharged the employer's obligation to all beneficiaries to pay compensation, except for pro rata costs and attorney's fees.

## II. FACTS AND PROCEEDINGS

Randall Kacyon, a wildlife biologist employed by the State of Alaska, died in a plane crash in the course of a moose survey in November 1996. He was survived by his wife, Georgina, and his fifteen-year old son, Jeremiah.

The State immediately began to pay workers' compensation death benefits of $700 per week, divided equally between the two beneficiaries. The State was responsible for paying Jeremiah his share of the death benefit until he turned nineteen, while he attended high school after his nineteenth birthday, and during his first four years of vocational school, trade school, or college.[3] The State estimated its maximum total liability to Jeremiah to be $137,900. Georgina's benefits were capped at ten years.[4] At $350 per week, her maximum benefits would be $182,000. But if Jeremiah ceased to be eligible for benefits, his benefits would be paid to Georgina.[5] Thus the maximum benefits payable to Georgina and Jeremiah collectively would be ten years of compensation at $700 per week or $364,000.

Georgina, as the personal representative of Randall, filed a wrongful death action against Hageland Aviation, the operator of the plane in which Randall died. Georgina did not notify the State or the Workers' Compensation Board of the commencement of the action within thirty days, as required by law.[6] Georgina eventually settled the wrongful death action with Hageland for $1,200,000. The settlement was agreed to in principle at a mediation conference on December 15, 1997. The settlement was "global" in the sense that it was not allocated between Georgina's and Jeremiah's claims as beneficiaries.

On December 16, 1997, Kacyon's counsel sent copies of the wrongful death action complaint to the State. Kacyon's counsel also advised the State "that we are considering a settlement offer" and inquired as to "the State's position regarding settlement of any workers' compensation lien which may apply." On December 19 Kacyon's counsel wrote the State advising it that the settlement would be sufficient to repay workers' compensation benefits received from the State "and those which would otherwise be received in the future ...." Noting that the costs and attorney's fees for recovering the settlement would be thirty percent of the amount, counsel offered to reimburse the State for seventy percent of the compensation payments already made (that is, to pay $28,700 of the $41,000 in payments already made) withholding the balance as pro rata costs and fees. As to future benefits, counsel suggested that all such benefits be reduced by seventy percent so that the State would only be paying attorney's fees and costs on future benefits that the State was discharged from paying as a result of the settlement.

On December 23, 1997, the State rejected this offer, at least provisionally, "without knowing the full extent of the recovery you anticipate." On January 2, 1998, Kacyon's counsel wrote the State, supplying the information the State had requested concerning the basis for its fees. As to the amount of the settlement, counsel wrote:

> Although the terms are confidential, the settlement involves more than a million dollars, which is clearly sufficient to relieve the State of any future obligation to pay benefits, subject to adjustment for pro rata share of litigation expenses. In other words, under any of the scenarios for possible future payouts, the recovery is greater than those future benefits.

Also on January 2, 1998, Georgina Kacyon moved in the superior court for "approval of settlement for the benefit of a minor" pursu-

---

**3.** See AS 23.30.215(a), 23.30.395(7).

**4.** See AS 23.30.215(a),(f),(g) as it existed at the time of Randall's death.

**5.** See AS 23.30.215(e).

**6.** See AS 23.30.015(j).

ant to Civil Rule 90.2, seeking approval of the settlement insofar as it affected Jeremiah. No notice of this motion or subsequent proceedings concerning it was given to the State. The motion explained that the settlement amount was $1,200,000; that attorney's fees would be $353,958, that costs in addition to attorney's fees were approximately $6,000, that Georgina and Jeremiah had been receiving workers' compensation benefits which would have to be repaid, and that the sum for repayment to the State after adjustment for litigation costs and fees would be approximately $30,000. These deductions would leave a net recovery of some $810,000. The motion proposed an allocation of ninety-five percent of the this sum to Georgina and five percent to Jeremiah based on a "years of dependency" formula like that approved by this court in *Horsford v. Estate of Horsford.*[7] On January 7, 1998, the superior court granted the motion, thus approving both the settlement and the allocation.

The order approving the settlement was sent by Kacyons' counsel to the State, which took the position that as to Jeremiah the settlement was "for an amount less than the amount of our liability without our written permission" and therefore that under AS 23.30.015(h) the State was not liable for anything further to Jeremiah.

The State thereupon filed a controversion notice with the Workers' Compensation Board. Georgina and Jeremiah countered by filing an application for adjustment of claim with the Board to determine whether "the employer's obligation to pay a prorated share of litigation costs and expenses in a third-party action should be calculated on the basis of the employer's total potential liability or

only on benefits actually paid by the employer prior to settlement of the third-party action."[8]

The Board held a hearing. The State's position was that it no longer had to pay any future benefits to Jeremiah because such benefits were forfeited under AS 23.30.015(h) because the compromise was not consented to by the State and it was for an amount less than the compensation to which Jeremiah would be entitled under the act. As to Georgina, the State's position was that it had no obligation to reimburse her for a pro rata share of her litigation expenses attributable to future workers' compensation benefits which the State saved by reason of the Hageland settlement.

The Kacyons argued that the forfeiture provisions of AS 23.30.015(h) did not apply because the global settlement was greater than past and future compensation payments due collectively to Jeremiah and Georgina, and the subsequent allocation by the superior court of only five percent of the net proceeds to Jeremiah did not harm the State because it was still entitled to a credit against the "global" proceeds.[9] They contended further that pro rata costs and fees were due not only on reimbursed benefits, but future benefits as well.

The Board ruled in favor of the Kacyons on both issues. Specifically, the Board ruled that

[e]mployer shall pay Applicants compensation benefits, for so long as they remain otherwise eligible, in an amount equal to thirty percent of the compensation which would otherwise be payable in the absence of the third party settlement as reimburse-

---

7. 561 P.2d 722 (Alaska 1977).

8. This was an open question until it was answered in 1999 in *Stone*, 990 P.2d at 623.

9. The Kacyons' position on this point was expressed as follows in their reply brief before the Workers' Compensation Board:

[S]uppose that the proceeds had been allocated by the court equally between Ms. Kacyon and Jeremiah. Clearly, in that situation, the State would be entitled to recover all compensation benefits previously paid to both claimants, subject to its obligation to share pro-rata in their

litigation expenses, and would be relieved of the obligation to make future payments to both claimants, subject to whatever obligation to share in litigation expenses attributable to the benefits the Board determines to be appropriate. That is exactly the same situation that exists under the allocation in question. Applicant has not sought, and does not seek, worker's compensation payments to Jeremiah in the future except to the extent that the State is obligated to pay a pro-rata share of the attorney's fees incurred in relieving it of the obligation to make them. It is in exactly the same position it would be in if the proceeds had been allocated differently.

ment for their *Cooper v. Argonaut* [10] fees, for their successful efforts in the third party action.

In reaching this conclusion the Board held that Jeremiah's claim for fees based on thirty percent of future benefits saved by the State was not barred by AS 23.30.015(h) because the allocation to Jeremiah was a judicial determination.

The State sought reconsideration, seeking, *inter alia*, clarification as to "what happens ... when the minor's allocation of the settlement proceeds is exhausted by the compensation off-set?" The State explained this request as follows:

> The Board did not state in its order that the minor, Jeremiah, is entitled to anything more than his attorney fee reimbursement so long as he is eligible for compensation, implying that the compensation entitlement continues to be off-set against the global settlement so long as he remains eligible. However, the Board states no statutory authority for such action, and the employer desires further clarification of the Board's intent and its authority for such action.

The Board issued a decision on reconsideration, ordering that full payments to Jeremiah should resume when the subsection .015(g) credit is exhausted.[11]

The State appealed, but only as to whether future benefits for Jeremiah were forfeited under AS 23.30.015(h). The superior court affirmed and the State brings the present appeal.

### Contentions of the Parties on Appeal

The State contends that its liability to pay future benefits to Jeremiah was extinguished under AS 23.30.015(h). It argues that the amount allocated to Jeremiah by the superior court was the final step of a compromise of Jeremiah's claim against Hageland. Since the allocated sum was less than the compensation to which Jeremiah would be entitled from the State and it is uncontested that the allocation was made without the State's approval, the State argues that the conditions required by subsection .015(h) have been satisfied. The State contends that the Board's rationale that the allocation was not a compromise but a judicial determination creates false opposites, for judicial approval of a compromise does not remove a compromise from the application of subsection .015(h). The State also argues that if judicial approval of the settlement took the settlement out of subsection .015(h) the Board should have ruled that the State should have been given notice and an opportunity to be heard in connection with the approval of the settlement.

In response, Jeremiah argues first that the "compromise" to which subsection .015(h) refers is the unallocated settlement between Georgina as personal representative and Hageland. Since this settlement was greater than amounts paid as compensation and any amount the State would have to pay in the future to both of Randall's beneficiaries, subsection (h) does not apply. Because the settlement is greater than all benefits paid and payable by the State, the State is not liable for future payments to him, except for pro rata fees and costs on benefits saved. Second, Jeremiah contends that subsection (h) does not apply because the allocation to him was not the product of a compromise with a third person but the result of a court order applying an approved method of allocating proceeds between beneficiaries in a wrongful death case. He argues further that the State's claim that it should have been notified and given an opportunity to be heard in the court proceedings regarding the allocation presents no more than a possible claim of harmless error, for if the State had been allowed to participate and had convinced the court to allocate an amount to Jeremiah greater than compensation paid and payable to him, the State "would be in exactly the same position that the [Kacyons] believe [it] to be in presently."

### III. DISCUSSION

■ We agree with the State that judicial approval of a compromise affecting a minor

---

**10.** *Cooper v. Argonaut Ins. Cos.,* 556 P.2d 525 (Alaska 1976).

**11.** According to the State, full payments of $350 resumed in March of 2000.

does not necessarily create an exception to subsection .015(h). While we have never decided what constitutes a "compromise" for the purposes of subsection .015(h), courts interpreting similar workers' compensation statutes have been presented with this question.

In *Banks v. Chicago Grain Trimmers Ass'n,* one question was whether an employee's acceptance of a remittitur following a favorable verdict was a compromise under an analogous provision of the Longshoremen's and Harbor Workers' Compensation Act.[12] The Court held that accepting a remittitur was not a compromise because "[a]n order of remittitur is a judicial determination of recoverable damages; it is not an agreement among the parties involving mutual concessions."[13] The Court also stated that the purpose of the compromise provision was to protect "the employer against his employee's accepting too little for his cause of action against a third party. That danger is not present when damages are determined, not by negotiations between the employee and the third party, but rather by the independent evaluation of a trial judge."[14]

By contrast, in *Morauer & Hartzell, Inc. v. Woodworth,* the question presented was whether a settlement in an amount which had been suggested by the trial judge at a pre-trial settlement conference and which was put in the form of a consent judgment was a compromise under the Longshoremen's Act.[15] The court held that the consent judgment was a compromise rather than a judicial determination because, among other reasons, "the consent judgment was not the result of the judge's independent finding of the value of the claim after full presentation of the evidence, but was at most an informal exploratory attempt to determine the possibilities for private settlement . . . ."[16] The court also observed that since the employee "was free to reject the settlement opportunity and have the case heard, the possibility of prejudice to the employer, arising from [the employee's] acceptance of a lesser amount than a jury might award, did exist here."[17]

Civil Rule 90.2 requires a court to "determine that the terms on which a minor's claim will be compromised are fair and reasonable,"[18] and to hold a hearing if the net settlement proceeds exceed $25,000.[19] The court's role in a Civil Rule 90.2 proceeding is not analogous to that of a trier of fact charged with the responsibility of determining damages in a civil action. Instead, the court in a Civil Rule 90.2 proceeding merely determines whether a settlement is fair and reasonable. And the determination is typically not made after a full presentation of the evidence. Instead the facts sufficient to demonstrate the reasonableness of the settlement are usually presented in summary form, typically in a nonadversarial context.

■ That pattern held in this case, as Georgina was the only witness to testify at the Rule 90.2 hearing. The hearing was very brief—its transcript is less than seven pages long. The proposed allocation between Georgina and Jeremiah which the court approved was not contested. And while the years-of-dependency formula which the allocation employed has been approved by this court,[20] it is by no means the exclusive method by which wrongful death damages may be allocated between a surviving spouse and a child. An adversary presentation might well have produced a greater allocation in favor of Jeremiah. For these reasons we conclude that the Civil Rule 90.2 hearing did not suffice to remove this case from the compromise provisions of AS 23.30.015(h).

■ But this only means that the "compromise" language of subsection (h) has been

---

12. 390 U.S. 459, 466–67, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968).

13. *Id.* at 467, 88 S.Ct. 1140.

14. *Id.*

15. 439 F.2d 550, 553 (D.C.Cir.1970).

16. *Id.*

17. *Id.*

18. *In re Estate of Brandon,* 902 P.2d 1299, 1310 (Alaska 1995).

19. Alaska R. Civ. P. 90.2(4).

20. *See Horsford,* 561 P.2d at 727.

satisfied. Still to be answered is whether the compromise at issue is the global settlement or the allocation to Jeremiah. On this point our view is that the global settlement should be regarded as the relevant compromise under the circumstances of this case.

Alaska Statute 23.30.015(g) and (h) lend themselves to a construction that they apply to "global" settlements reached by personal representatives with third-party tortfeasors. These subsections do not speak of breaking down benefits among the beneficiaries of a deceased worker. Instead, subsection .015(g) requires the employee's representative to "promptly pay to the employer the *total* amounts paid by the employer under (e)(1)(A)-(C) of this section insofar as the recovery is sufficient after deducting *all* litigation costs and expenses." (Emphasis added.) Subsection .015(e)(1)(C) in turn encompasses "*all* amounts paid as compensation." And an excess recovery by the representative "shall be credited against *any* amount payable by the employer thereafter."

In the present case Georgina's and Jeremiah's benefits were to some extent interdependent. If Jeremiah became ineligible his share would be paid to Georgina. Moreover, in the proceedings before the Board the Kacyons agreed that the global settlement should be the measure of the credit the State was entitled to as to their collective compensation benefits and foreswore any claim for future compensation benefits except for pro rata costs and fees. Given the Kacyons'

concession, the State is made no worse off by the allocation than it would have been if Jeremiah's allocation had been greater than the amount of workers' compensation he was due.[21]

Under these circumstances, we believe that the global settlement should be considered the relevant compromise to which subsection (h) refers.[22] The subsequent allocation did nothing to prejudice the State and, "in the absence of language plainly demanding it, a construction is not to be favored which visits a forfeiture on the employee or his dependent and gives a windfall to the [employer]."[23]

## IV. CONCLUSION

The judgment of the superior court is reversed and this case is remanded to the Board with directions to vacate its decision on reconsideration requiring that full payments to Jeremiah resume when the sum allocated to him from the global settlement is exhausted. The Board should reinstate its earlier order that Jeremiah should receive as reimbursement for costs and fees incurred in the third-party action an amount equal to thirty percent of the compensation to which he otherwise would be entitled. Appropriate offsets should be ordered to correct overpayments that Jeremiah has received. RE-VERSED and REMANDED.

---

21. The Kacyons' concession resembles the concession made by the employee in *Bell v. O'Hearne*, 284 F.2d 777 (4th Cir.1960). There the employee recovered a judgment for $6,500 after trial in a third-party action. *Id.* at 778. The third party appealed and while the case was on appeal the employee settled the case for $5,000 without first obtaining written approval of the employer. *Id.* The employee took the position that the employer should be credited the full amount of the judgment, $6,500, rather than merely the amount of the settlement, $5,000, against future compensation benefits. *Id.* at 778-79. In view of this concession, the court held that the discounted settlement was not a compromise within the meaning of the compromise provisions of the Longshoremen's Act: "There was no compromise here of any interest with which the employer was in any way concerned, or to which the provision in section 933(g) was directed." *Id.* at 781.

22. In different circumstances it may be appropriate to consider individual allocations as compromises under subsection .015(h). In *Gossett v. ERA Meyeres Real Estate*, for example, we concluded that a global settlement must be allocated before the beneficiary's share of the apportioned settlement can be compared against the amount of the employer's liability. 787 P.2d 1025, 1026-27 (Alaska 1990). In *Gossett*, however, the global settlement was made in payment of the employee's claim and his wife's loss of consortium claim. *Id.* at 1026. Unlike the Kacyons' situation, where each has received and is due workers' compensation benefits, any recovery by the wife in *Gossett* was not subject to a credit against amounts payable by the employer. *Id.*

23. *Bell*, 284 F.2d at 781.