The CONNECTICUT BANK AND TRUST COMPANY, Executor of the Estate of Warren G. Horton, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

The CONNECTICUT BANK AND TRUST COMPANY, Executor of the Estate of Charles F. Musk, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

The CONNECTICUT BANK AND TRUST COMPANY, Executor of the Estate of Mary Ann Musk, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 561, 562, 563, Dockets 71–1964, 71–1965 and 71–1966.

United States Court of Appeals, Second Circuit.

Argued June 30, 1972.

Decided Aug. 4, 1972.

John S. Mason, Jr., Hartford, Conn. (Reid & Riege, P. C. and Thomas C. McKone, Hartford, Conn., on the brief), for plaintiff-appellant.

Richard S. Halberstein, Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Richard W. Perkins, Tax Div., Dept. of Justice, Washington, D. C., and Stewart H. Jones, U. S. Atty., D. of Conn., on the brief), for defendant-appellee.

Before MOORE, ANDERSON and TIMBERS, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

On June 14, 1965, Warren and Virginia Horton and Charles and Mary Ann Musk were killed when the car in which they were riding exploded after being struck by a tractor-trailer truck, owned by HMH Motor Service, while traveling

the Chesapeake Bay Bridge Tunnel in Virginia. The estate of Mrs. Horton is not involved in this litigation. Mr. and Mrs. Musk and Mr. Horton (the decedents) were domiciled in Connecticut at the time of their deaths and letters testamentary were issued to The Connecticut Bank and Trust Company as executor of their respective wills.

During 1966, the executor commenced wrongful death actions in the state courts of New York against HMH which were removed to the United States District Court for the Southern District of New York. The suits were settled for $320,000 before going to trial. The recovery of this amount, which was made on the assumption of instantaneous deaths, included nothing for ante-mortem pain and suffering.

Although the proceeds were held by the executor for distribution in accordance with the terms of the wills, they were not included by the executor in the decedents' gross estates for the federal estate tax; the Commissioner, however, determined that they should have been

included and he accordingly assessed deficiencies against each of the estates. The deficiencies were paid and these suits were filed on the claims for refunds.

The district court 330 F.Supp. 997, held that the wrongful death recoveries, and therefore the legal interests which the Commissioner sought to tax, cf. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 80–81, 626, 60 S. Ct. 424, 84 L.Ed. 585, 1035 (1940), were ascertained and determined under Connecticut law, a conclusion, the correctness of which, is not questioned on these appeals; and it further held that all sums recovered under Connecticut's wrongful death statutes [1] were properties held by the decedents at the time of their deaths and were therefore parts of their gross estates under § 2033 of the Internal Revenue Code.[2] We are unable, however, to agree with this determination.

■ The crucial issue to be decided under § 2033 is whether or not the value of an action for wrongful death is

1. Connecticut General Statutes § 52–555 reads as follows:

"In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of."

Connecticut General Statutes § 45–280 reads as follows:

"All damages recovered for injuries resulting in death, which death occurred before October 1, 1961, after payment of the costs and expenses of suit, all expenses of last illness and all funeral bills, the expenses of administration and such amount for the support of the surviving spouse or family of the deceased

during the settlement of the estate as the court of probate may allow, shall be distributed in accordance with the law concerning the distribution of intestate personal estate. All damages recovered for injuries resulting in death, which death occurred on or after October 1, 1961, after payment of the costs and expenses of suit, all expenses of last illness and all funeral bills, the expenses of administration and claims against the estate and such amount for the support of the surviving spouse or family of the deceased during the settlement of the estate as the court of probate may allow, shall be distributed as personal estate in accordance with the last will and testament of the deceased if there is one or, if not, in accordance with the law concerning the distribution of intestate personal estate, provided such damages shall not be subject to taxation under the provisions of chapter 216."

2. Section 2033 of the Internal Revenue Code of 1954 reads as follows:

"The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death."

"property . . . of the decedent at the time of his death." Much of the Government's argument and the opinion of the court below rest on the differences between the Connecticut statutory scheme for wrongful death recovery and the more common pattern of recovery in the majority of the states based upon "Lord Campbell's Act," which provides for a direct right of action on behalf of designated beneficiaries of the decedent to recover for his wrongful death, with damages to be measured by the loss to the survivors, see generally 2 F. Harper & F. James, The Law of Torts, § 24.2, at 1285–1288, §§ 25.14–25.15, at 1329–1333 (1956). The Connecticut statutes, on the other hand, provide for a right of action in the executor or administrator, with damages to be measured on the basis of the loss of the decedent's ability to carry on life's activities, Floyd v. Fruit Industries, Inc., 144 Conn. 659, 669–677, 136 A.2d 918, 923–927 (1957); Chase v. Fitzgerald, 132 Conn. 461, 466–471, 45 A.2d 789, 791–793 (1946). In addition, by recent amendments, the wrongful death proceeds in Connecticut are distributed according to the terms of the decedent's will, if there is one, and are subject to the general claims of the estate. The differences in results under the two types of statutes may be more theoretical than real, *cf.* Foran v. Carangelo, 153 Conn. 356, 362, 216 A.2d 638, 641 (1966), but in any event, these differences have little relevance concerning the question of whether or not the right of action for wrongful death was *property owned at death.*

Simple logic mandates the conclusion that an action for wrongful death cannot exist until a decedent has died, at which point, he is no longer a person capable of owning any property interests. The Government's reply to this is that at the very instant of death the right of action arose which the decedent was then capable of owning at death. The only authorities cited for this position, however, are cases where *preexisting* property interests were *valued* as of the instant of death, but valuation at time of death of prior existing interests is a far different concern from that in this case where the property interest itself has sprung from the fact that the death has taken place.

While it is true that Congress may constitutionally place an excise tax on property created by death, as well as upon property transferred by death, Fernandez v. Wiener, 326 U.S. 340, 352, 66 S.Ct. 178, 90 L.Ed. 116 (1945); Tyler v. United States, 281 U.S. 497, 502, 50 S.Ct. 356, 74 L.Ed. 991 (1930), § 2033 does not read so broadly. In a discussion of the estate tax the Supreme Court described the scope of § 2033: "What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death," Y.M.C.A. of Columbus, Ohio v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558 (1924); *see also,* Nichols v. Coolidge, 274 U.S. 531, 537, 47 S.Ct. 710, 71 L. Ed. 1184 (1927). Where, as here, there was no property interest in the decedent which passed by virtue of his death, but rather one which arose after his death, such an interest is not property owned at death and not part of the gross estate under § 2033, *cf.* Mandel v. Sturr, 266 F.2d 321, 324–325 (2 Cir. 1959); Note, "Estate Taxation of Contract Rights Subject to Conditions Precedent," 67 Yale L.J. 467, 470–73 (1958).

This construction of the relevant statutes is supported both by Connecticut law and Treasury Department Revenue Rulings. The Connecticut Supreme Court has stated that under Connecticut statutes "no person, during his lifetime, can possess an action or right of action embracing, as elements of damage, his own death or any of its direct consequences," *Foran, supra,* 153 Conn. n. 2 at 360, 216 A.2d at 641. Connecticut General Statute § 45–280 specifically states that wrongful death proceeds are not part of the gross estate for state succession tax purposes, and the Probate Court Administrator, a Connecticut Superior Court Judge, has ruled that

wrongful death proceeds are not part of the gross estate for purposes of determining the probate court fee, Opinion No. 10 of the Connecticut Probate Court Administrator (February 4, 1971).

The Treasury Department has issued three Revenue Rulings concerning the inclusion of wrongful death proceeds under § 2033, all of which hold that the proceeds are not part of the gross estate. In this case, the Government tries to distinguish them because they concerned rights of action arising under New Jersey and Virginia state law and the federal Death on the High Seas Act, 46 U.S.C. § 761; however, the rationale of those rulings is fully applicable here. In Rev.Rul. 54–19, 1954–1 Cum.Bull. 179, 180, the Department stated: "Inasmuch as the decedent had no right of action or interest in the proceeds at the time of his death, nothing 'passed' from the decedent to the beneficiaries. Accordingly, the amounts recovered by the beneficiaries would not be includible in the decedent's gross estate for Federal estate tax purposes." It held that such proceeds were not part of the gross estate in Rev.Rule. 68–88, 1968–1 Cum.Bull. 397, 398, because "[t]he right of action for wrongful death does not accrue until death occurs," and in Rev.Rul. 69–8, 1969–1 Cum.Bull. 219, because "[t]he decedent in his lifetime never had an interest in either the right of action or the proceeds." See also Rev.Rul. 55–581, 1955–2 Cum.Bull. 381, holding that an allotment paid by the armed services to designated beneficiaries of servicemen who die in active duty is not part of the gross estate; and Rev.Rul. 55–87, 1955–1 Cum.Bull. 112, holding that a lump sum payment for funeral expenses to social security recipients is not taxable under § 2033.

As a second point on appeal, the Government argues that the wrongful death proceeds must also be included in the gross estate under § 2041 of the Code as "property with respect to which the decedent has at the time of his death a general power of appointment".[3] This argument must actually assume that the wrongful death proceeds were not property owned by the decedent at death under § 2033, because § 2041 is concerned with the power to deal with property belonging to someone else, cf. 26 C.F.R. § 20.2041–1(b) (2) (1972).

The Government claims that the wrongful death proceeds are subject to a § 2041 power of appointment because they are to be distributed under the terms of the decedents' wills as authorized by Connecticut General Statutes § 45–280. This, in effect, asserts that any property which is distributed according to a testamentary disposition is taxable as part of the gross estate, a view which enlarges the statute far beyond the purposes intended for it by Congress. A sufficient answer to the Government's position is that, at the very least, property subject to a § 2041 power of appointment must be in existence prior to the time of the decedent's death, cf. United States v. Merchants National Bank of Mobile, 261 F.2d 570, 573 (5 Cir. 1958).[4]

Section 2041 was never intended to encompass within the gross estate what the Government now claims. If the Government were correct, then income earned during the administration of an estate and later distributed according to the terms of the will would be included in the value of the gross estate under § 2041, but it is abundantly clear that such income is not subject to the estate tax, Alston v. United States, 349

3. The pertinent parts of § 2041(a) (2) of the Internal Revenue Code of 1954 read as follows:
   "The value of the gross estate shall include the value of all property . . .
   [t]o the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 . . . ."

4. We intimate no opinion on the question of whether or not property interests in existence prior to a decedent's death, but subject to a power of appointment exercisable only by a testamentary disposition, are part of the gross estate under § 2041, compare Second National Bank of Danville, Ill. v. Dallman, 209 F.2d 321 (7 Cir. 1954), with Keeter v. United States, 461 F.2d 714 (5 Cir. 1972).

F.2d 87, 88–89 (5 Cir. 1965); Waldrop v. United States, 137 F.Supp. 753, 756, 133 Ct.Cl. 902 (1956); *see also,* Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940 (1941).

Moreover § 2041(a) (2) provides that "[a] disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power." "If a decedent exercises this right [to disclaim], the value of the property as to which he has renounced the power will not be included in his gross estate", Jenkins v. United States, 428 F.2d 538, 550 (5 Cir.), cert. denied, 400 U.S. 829, 91 S.Ct. 59, 27 L.Ed.2d 59 (1970); see also, 26 C.F.R. § 20.2041–3(d) (6) (1972). Under the Government's theory, however, it would be impossible for the decedent to renounce his "general power of appointment" over the wrongful death proceeds, because they did not exist prior to his death.

The judgments of the district court are reversed and the cases remanded for the determination of the amounts of the refunds due to the respective appellants and for their costs.