In the Matter of the ESTATE OF
Florian A. MALDONADO,
Jr., Deceased:

Barbara Maldonado, Surviving
Spouse, Petitioner,

v.

Brooks Bailey, Personal Representative of the Estate of Florian A. Maldonado, Jr., and William Schendel, Esq., Guardian ad Litem of the Minor Children, Jaden Maldonado and Cherish Maldonado, Respondents.

No. S–11067.

Supreme Court of Alaska.

July 22, 2005.

---

**31.** *Deininger v. Deininger,* 835 P.2d 449, 451 (Alaska 1992) (upholding gradual two-year transition period to 50/50 custody).

Joseph L. Paskvan, Paskvan, Ringstad, Parrish, P.C., Fairbanks, for Petitioner.

Richard W. Hompesch II, Hompesch & Evans, P.C., Fairbanks, for Respondent Brooks Bailey.

William B. Schendel, Winfree Law Office, A.P.C., Fairbanks, for Respondent Guardian ad Litem.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I.  INTRODUCTION

We granted review to determine whether a surviving spouse's wrongful death proceeds should be included within the decedent's augmented estate as property of the surviving spouse, thereby offsetting the surviving spouse's elective share.  The superior court included the wrongful death proceeds in the augmented estate on the theory that it was property owned by the surviving spouse at the decedent's death.  Because we conclude that any interest in wrongful death proceeds is not owned by the surviving spouse at the time of the decedent's death, we reverse the decision of the superior court.  However, because proceeds from survivorship claims should be classified as probate assets, we remand to the superior court to determine what portion, if any, of the settlement agreement represented payment for the decedent's survivorship claims, and to include that amount within the augmented estate.

## II.  FACTS AND PROCEEDINGS

Florian Maldonado, Jr., the decedent, died testate on November 28, 1999 due to mesothelioma, a type of lung cancer caused by exposure to asbestos.  He was survived by his wife, Barbara Maldonado, and two minor children, Jaden and Cherish Maldonado.  Florian adopted Jaden and Cherish before his marriage to Barbara and was the children's sole legal parent.

On November 22, 1999 Florian executed a will devising to Barbara "her elective share, homestead allowance, and family allowance as provided by AS 13.12.202,[1] AS 13.12.402,[2]

**1.**  AS 13.12.202(a) gives the surviving spouse the right of election "to take an elective share  amount equal to one-third of the augmented estate."

**2.**  AS 13.12.402 entitles the surviving spouse to a

and AS 13.12.404.[3]" He left the remainder of his estate to Jaden and Cherish, in trust until they reach the age of twenty-five.

Before he died, Florian filed suit in Washington against numerous asbestos manufacturers and suppliers alleging injury from asbestosis, and some of these claims were settled before his death. After Florian died, the estate's personal representative added claims against these defendants for wrongful death. Shortly thereafter, the estate settled these claims for approximately $945,000. The settlement agreements purported to resolve all claims against the defendants, including wrongful death, "surviving personal injury" claims, loss of consortium, and other claims. Barbara and the guardian *ad litem* (GAL) then agreed to distribute forty percent of the net settlement proceeds to Barbara and thirty percent to each of the children.

Pursuant to the will, Barbara sought to collect her elective share of the decedent's augmented estate under AS 13.12.202. The GAL argued that Barbara's interest in the wrongful death proceeds should be included in the decedent's augmented estate under AS 13.12.207, on the theory that Barbara owned this interest at the time of Florian's death, and accordingly moved for partial summary judgment on this issue. Barbara opposed the motion.[4] Following the recommendation of the probate master, the superior court agreed with the GAL.

We granted Barbara's petition for review on this issue.

homestead allowance of $27,000.

3. AS 13.12.404(a) provides that "the decedent's surviving spouse and minor children . . . are entitled to a reasonable allowance in money out of the estate for their maintenance during the period of administration."

4. The consequence to Barbara of this legal determination is substantial. The net assets of the probate estate total around $110,000. The inclusion of Barbara's interest in the wrongful death proceeds, $378,000, would therefore dramatically increase the decedent's augmented estate under the probate code. While Barbara's one-third elective share of the augmented estate would accordingly increase in value, the funds used to satisfy her elective share amount would come primarily, if not solely, from her settlement pro-

## III. STANDARD OF REVIEW

■■■■ We review a grant of summary judgment *de novo*, determining whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law.[5] We review questions of law *de novo*, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

## IV. DISCUSSION

Whether a surviving spouse's interest in a wrongful death recovery is included in the decedent's augmented estate for the elective share calculation is an issue of first impression in Alaska. Barbara argues that the superior court erred in concluding that her interest in a wrongful death recovery is property that she owned at the time of her husband's death. The GAL counters that such a property interest is owned at death by the surviving spouse and should be included in the augmented estate. Resolution of this question turns on interpretation of Alaska's elective share statute.

### A. Alaska's Elective Share Law

An elective share statute entitles a surviving spouse to choose to take as provided by the decedent's will or to take a statutory percentage of the decedent's augmented estate. Alaska's elective share law entitles the surviving spouse to take an elective share equal to one-third of the decedent's augmented estate.[7] Elective share laws were enacted

ceeds. *See* AS 13.12.209(a) and *infra* n. 37. In other words, she would receive little-to-no distribution from the net assets of the probate estate under the will. In contrast, if Barbara's interest in the settlement is not considered part of the augmented estate, then the settlement amount would be not charged against Barbara, but received in addition to her elective share.

5. *Mount Juneau Enters., Inc. v. City & Borough of Juneau*, 923 P.2d 768, 772–73 (Alaska 1996).

6. *Carr–Gottstein Props., L.P. v. Benedict*, 72 P.3d 308, 310 (Alaska 2003).

7. AS 13.12.202(a). The Alaska elective share statute only applies to a surviving spouse if the decedent died domiciled within Alaska. *Id.* The elective share is obtained independently from the

in response to the concern, especially in common law property states, that the surviving spouse would not receive a "fair share" of the decedent's estate where the decedent's will and non-probate transfers unreasonably favored other parties.[8] Because Florian devised to Barbara her elective share under the statute, Barbara's elective share ceased to be an "election"; it is her primary inheritance under the will.

An augmented estate consists of the sum of four types of property: (1) the decedent's net probate estate;[9] (2) the decedent's nonprobate transfers to parties other than the surviving spouse;[10] (3) the decedent's nonprobate transfers to the surviving spouse;[11] and (4) the surviving spouse's property and nonprobate transfers to others.[12] All property under these headings must be included in the augmented estate, "whether real or personal, movable or immovable, tangible or intangible, wherever situated."[13] Property is defined elsewhere in the probate code as "anything that may be the subject of ownership, and includes both real and personal property and an interest in real or personal property."[14]

The drafters of the Uniform Probate Code (UPC) gave two primary justifications for augmenting the probate estate to include various forms of property not actually owned by the decedent at death, when calculating the elective share:

> (1) to prevent the owner of wealth from making arrangements which transmit his property to others by means other than probate deliberately to defeat the right of the surviving spouse to a share, and (2) to prevent the surviving spouse from electing a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent either during the lifetime of the decedent or at death by life insurance, joint tenancy assets and other nonprobate arrangements.[15]

The elective share amount under the augmented estate calculation thus attempts to strike a balance between under- and over-inheritance to the surviving spouse.

In 1990 the elective share and augmented estate provisions of the UPC were overhauled with the goal of bringing "elective-share law into line with the contemporary view of marriage as an economic partnership."[16] In 1996 the Alaska legislature adopted some of the revisions to the UPC's elective share law, while specifically rejecting others.[17] The legislature followed the revised UPC by including within the augment-

---

surviving spouse's homestead allowance, exempt property, and family allowance, if any. AS 13.12.202(c). If one-third of the augmented estate is less than $50,000, then the surviving spouse is entitled to a supplemental elective share. AS 13.12.202(b).

**8.** *See* Unif. Probate Code, Art. II, Pt. 2, gen. cmt. (Pre–1990 Version), 8 U.L.A. 292 (1998).

**9.** AS 13.12.203. The net probate estate "includes the value of the decedent's probate estate, reduced by funeral and administrative expenses, homestead allowance, family allowances, exempt property, and enforceable claims." AS 13.12.204.

**10.** AS 13.12.203. *See also* AS 13.12.205 (identifying non-probate transfers to non-spouses that are included in augmented estate).

**11.** AS 13.12.203. *See also* AS 13.12.206 (identifying non-probate transfers to surviving spouse that are included in augmented estate).

**12.** AS 13.12.203. *See also* AS 13.12.207 (identifying surviving spouse's property held at time of

decedent's death that is included in augmented estate).

**13.** AS 13.12.203.

**14.** AS 13.06.050(39).

**15.** Unif. Probate Code § 2–202 cmt. (Pre–1990 Version), 8 U.L.A. 299 (1998).

**16.** Unif. Probate Code, Art II, Pt. 2, gen. cmt. (Revised 1990 Version) (amended 1993), 8 U.L.A. 93 (1998). Professor Lawrence Waggoner describes the 1990 revisions to the UPC's elective share law as using a mechanical formula to "implement[ ] the partnership theory by approximation." Lawrence W. Waggoner, *Marital Property Rights in Transition*, 59 Mo. L.Rev. 21, 52 (1994).

**17.** Rep. Parnell, Sponsor Statement for House Bill (H.B.) 308, 19th Leg., 2d Sess. (1996), in House Jud. Comm. File, H.B. 308. *See also* 1996 House Journal 2661 (rejecting Rep. Finkelstein's proposed amendment to H.B. 308 to include § 2–202 of revised UPC establishing accrual theory of election).

ed estate certain nonprobate assets, such as life insurance payable to third parties, as well as the spouse's property owned at the decedent's death regardless of whether the property was derived from the decedent.[18] On the other hand, the legislature rejected the UPC's accrual theory of election, which would have entitled a surviving spouse to receive up to half of the augmented estate depending on the length of the marriage, and instead kept the elective share amount fixed for all spouses at one-third of the augmented estate.[19] It thus remains to some extent unclear whether the legislature approved the economic partnership justification behind the elective share statutes.[20]

This case requires us to determine whether the wrongful death proceeds realized by Barbara from the settlement with the asbestos manufacturers and suppliers are part of the augmented estate. We consider first whether the proceeds are part of the net probate estate, under AS 13.12.204. Next, we consider the GAL's argument that they are part of the surviving spouse's property under AS 13.12.207.

### B. Wrongful Death Proceeds to a Spouse Are Not Included in the Net Probate Estate.

■ We first consider whether proceeds or unlitigated claims of a surviving spouse under Alaska's wrongful death statute are included within the decedent's net probate

estate, the first category of property in the augmented estate calculation. For the reasons that follow, we conclude that they are not.

An action for wrongful death in Alaska, which was created by statute,[21] is intended to compensate those individuals who have suffered direct losses as a result of the decedent's death.[22] Alaska Statute 09.55.580 allows an estate's personal representative to seek damages against a party whose wrongful acts or omissions caused the decedent's death, so long as the decedent would have been able to maintain a cause of action against that party for an injury caused by the same acts or omissions had he or she lived. When the decedent is not survived by a spouse, children, or other dependents, the statute instructs that "the amount recovered shall be administered as other personal property of the decedent but shall be limited to pecuniary loss." [23] In these cases, the personal representative is the real party in interest [24] and the amounts recovered are to be included within the probate estate.[25]

■ However, as in this case, when the decedent is survived by a spouse, children, or other dependents, the compensation recovered "shall be exclusively for [their] benefit." [26] In these cases, the real party in interest is the spouse or children, and the personal representative is but a nominal party.[27] Damages are not measured by the

**18.** AS 13.12.205, .207, *as amended by* ch. 75, § 3, SLA 1996; *see* House Jud. Comm. Mins., H.B. 308 (Oct. 16, 1995) (testimony of Jerry Kurtz).

**19.** *See* 1996 House Journal 2661 (rejecting proposed amendment to establish accrual theory of election); *see also* House Jud. Comm. Mins., H.B. 308 (Oct. 16, 1995) (testimony of Bob Manly) (explaining that H.B. 308 did not include accrual theory of election because majority of Alaskan state bar probate committee did not believe in favoring longer marriages over shorter ones).

**20.** As a result, we find Barbara's request to settle the present dispute on marriage-as-economic-partnership grounds unconvincing.

**21.** *Koski v. Alaska Juneau Gold Mining Co.,* 6 Alaska 334, 335 (D.Alaska 1921) ("At common law there was no civil action for death by wrongful act; such action is purely a creature of statute."). *See also Hanebuth v. Bell Helicopter Int'l,*

694 P.2d 143, 145 (Alaska 1984) (observing that cause of action for wrongful death was created by statute).

**22.** *In re Estate of Pushruk,* 562 P.2d 329, 331 (Alaska 1977).

**23.** AS 09.55.580(a).

**24.** *Pushruk,* 562 P.2d at 331.

**25.** *Id. See also Horsford v. Estate of Horsford,* 561 P.2d 722, 726–27 (Alaska 1977) (wrongful death proceeds are administered as part of estate when decedent is not survived by spouse, children or other dependents).

**26.** AS 09.55.580(a).

**27.** *Pushruk,* 562 P.2d at 330–31; *Koski,* 6 Alaska at 335–36.

losses to the decedent; rather, damages are measured by the losses to the survivors.[28] Damages may include awards for harms such as (1) the "deprivation of the expectation of pecuniary benefits" that would have resulted had the decedent continued to live; (2) loss of contributions for support; (3) loss of assistance or services; (4) loss of consortium; (5) loss of prospective training and education; and (6) medical and funeral expenses.[29]

As a consequence of this statutory scheme, we have held that wrongful death proceeds are included in the net probate estate when the decedent is not survived by a spouse, children, or other dependents, but that the proceeds are excluded from the net probate estate when the decedent is survived by such individuals.[30] Thus, the wrongful death proceeds received by Barbara should not be included in the augmented estate under the first category of property, i.e., property within the net probate estate.

### C. The Surviving Spouse's Interest in Wrongful Death Proceeds Is Not Property Owned at Decedent's Death.

We turn next to the question of whether the wrongful death proceeds can be included under the last category of property within the augmented estate: property owned by the surviving spouse at the decedent's death.[31] This presents a question of first impression in Alaska and requires inter-

pretation of Alaska probate law. When interpreting a statute, we "consider its language, its purpose, and its legislative history, in an attempt 'to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others' "[32] and adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[33] We conclude that the proceeds should not be included as property of the surviving spouse.

As mentioned above, the augmented estate includes "the surviving spouse's property and nonprobate transfers to others."[34] This category was added when the probate code was revised; it reflects the desire to implement the partnership theory of marriage. It would "decrease or even eliminate the entitlement of a surviving spouse in cases in which the marital assets were more or less equally titled or disproportionately titled in the surviving spouse's name."[35] The surviving spouse's property is defined by AS 13.12.207(a) as:

(1) *property that was owned by the decedent's surviving spouse at the decedent's death,* including

(A) the surviving spouse's fractional interest in property held in joint tenancy with the right of survivorship;

(B) the surviving spouse's ownership interest in property or accounts held in co-

---

**28.** As a result, even though the action is based on the injury caused to the decedent, a wrongful death action brought by surviving beneficiaries should not be viewed as a derivative action; rather, it is an "independent and distinct" cause of action. *Walls v. Am. Optical Corp.,* 740 So.2d 1262, 1274 (La.1999). *See also Pushruk,* 562 P.2d at 330–31; *Shaw v. Jendzejec,* 717 A.2d 367, 369–70 (Me.1998). The independent nature of wrongful death claims contrasts with survivorship claims, which under AS 09.55.570 are brought by a personal representative on behalf of the decedent and are plainly derivative. *Walls,* 740 So.2d at 1274; *Shaw,* 717 A.2d at 369–70. We discuss survivorship claims further in Part IV.D, *infra.*

**29.** AS 09.55.580(c).

**30.** *Horsford,* 561 P.2d at 726–27.

**31.** *See* AS 13.12.203, .207 (identifying surviving spouse's property held at time of decedent's death that is included in augmented estate). The

superior court included the proceeds within the augmented estate solely under this theory. In addition, the appellees limit their arguments on appeal to the inclusion of the proceeds under this sub-category of property.

**32.** *Alyeska Pipeline Serv. Co. v. DeShong,* 77 P.3d 1227, 1234 (Alaska 2003) (quoting *Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 787 (Alaska 1996)).

**33.** *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**34.** AS 13.12.203. *See also* AS 13.12.207.

**35.** UNIF. PROBATE CODE, Art II, Pt. 2, gen. cmt. (Revised 1990 Version) (amended 1993), 8 U.L.A. 93 (1998). *See supra* nn. 16–19 and accompanying text.

ownership registration with the right of survivorship; and

(C) *property that passed to the surviving spouse by reason of the decedent's death,* but not including the spouse's right to homestead allowance, family allowance, exempt property, or payments under 42 U.S.C. 301–1397f (Social Security Act); and

(2) property that would have been included in the surviving spouse's nonprobate transfers to others, other than the spouse's fractional and ownership interests included under (1)(A) or (B) of this subsection, had the spouse been the decedent.

(Emphases added.) Thus, the statute includes both property owned by the surviving spouse at the time of the decedent's death and property that passed to the surviving spouse by reason of the decedent's death. The value of the surviving spouse's property under AS 13.12.207 will be applied to satisfy the elective share before probate assets or nonprobate transfers are touched.[36]

It may well be that a recovery under the wrongful death statute would qualify as "property" under the probate code, regardless of whether the recovery has been reduced to actual proceeds or whether it remains an unlitigated interest. Property is defined expansively as "anything that may be the subject of ownership, and includes both real and personal property and an interest in real or personal property,"[37] and it is included within the augmented estate "whether real or personal, movable or immovable, tangible or intangible, wherever situated."[38] Moreover, we have held in other circumstances that individuals have a property interest in unlitigated claims, at least to the extent that their interest in the claims cannot be taken away by the government without due process of law.[39]

But we need not decide whether to extend the holding of these cases to the present controversy, because even if the wrongful death proceeds are "property" under the probate code, we conclude today that they could not have been owned by the surviving spouse at the time of the decedent's death, as is required under AS 13.12.207. We reach this conclusion because the wrongful death statute, AS 09.55.580,[40] provides that a cause of action for wrongful death does not vest until after the death of the decedent. As discussed above, a wrongful death action is independent and distinct from the action that the decedent would have been able to bring had he or she survived; in other words, it is not a derivative action.[41] The action cannot exist, and cannot vest in any survivors, until a death has occurred.[42] Moreover, the statute explains that the action must "be commenced within two years after the death."[43] The statute of limitations begins to run immediately after the death, not after the tort

---

**36.** Alaska Statute 13.12.209 mandates that, before other components of the net probate estate or nonprobate transfers are applied to satisfy the elective share, probate assets passing to the surviving spouse, nonprobate transfers to the surviving spouse, and the property of the surviving spouse under AS 13.12.207 should be applied to satisfy the elective share. Alaska Statute 13.12.207(b) designates the decedent's death as the time to value the surviving spouse's property.

**37.** AS 13.06.050(39).

**38.** AS 13.12.203.

**39.** *Anderson v. State ex rel. Cent. Bering Sea Fishermen's Ass'n,* 78 P.3d 710, 714 (Alaska 2003); *Patrick v. Lynden Transp., Inc.,* 765 P.2d 1375, 1378 (Alaska 1988); *Bush v. Reid,* 516 P.2d 1215, 1219 (Alaska 1973). In *Patrick* we stated, "[i]t is clear that under both federal and Alaska law, an unlitigated claim is considered a property interest." 765 P.2d at 1378.

**40.** For additional discussion of this statute, *see supra* Part IV.B.

**41.** *See supra* n. 28. *See also Walls v. Am. Optical Corp.,* 740 So.2d 1262, 1270 (La.1999) ("the wrongful death action arises at the death of the victim, and compensates the beneficiaries for their injuries that occur at the moment of the victim's death and thereafter …").

**42.** For example, AS 09.55.580(a) entitles the personal representative to bring the action "when the death of a person is caused by the wrongful act or omission of another." Similarly, the surviving spouse and children are entitled to damages "which will fairly compensate for the injury resulting from the death." AS 09.55.580(c); *see Kulawik v. ERA Jet Alaska,* 820 P.2d 627, 636 (Alaska 1991) (fair compensation includes recovery for loss of prospective inheritance).

**43.** AS 09.55.580(a).

which caused the injury.[44] Thus we conclude that any interests or proceeds in wrongful death cannot be considered property owned by the surviving spouse at the time of the decedent's death.

Similarly, wrongful death proceeds are not "property that passe[s] to the surviving spouse by reason of the decedent's death."[45] While this statutory language might include property within the augmented estate that vests in the surviving spouse immediately after the decedent's death, it cannot be said that wrongful death proceeds "pass" to the surviving spouse by reason of the decedent's death. The verb "pass" connotes that the assets pre-existed the decedent's death. The expectancy interest in wrongful death proceeds is an asset that is *created* by reason of the decedent's death; it is not an asset that *passes* from one owner to another.

The Second Circuit came to a similar conclusion in an estate tax case.[46] It held that a right of action for wrongful death proceeds cannot be considered property owned at death: "Simple logic mandates the conclusion that an action for wrongful death cannot exist until a decedent has died, at which point, he is no longer a person capable of owning any property interests."[47] The court differentiated pre-existing property interests and noted that a wrongful death action "itself has sprung from the fact that the death has taken place" and that "there was no property interest in the decedent which passed by virtue of his death, but rather one which arose after his death."[48] We find this logic to apply equally to the elective share provisions.

We reject the GAL's attempt to analogize wrongful death proceeds to life insurance proceeds. The payout under a decedent's life insurance policy represents a nonprobate transfer that is added back into the augmented estate, regardless of whether the beneficiary was the surviving spouse[49] or some other third party.[50] But there are important differences between life insurance and wrongful death proceeds. First, a life insurance policy exists pursuant to a contractual agreement, which vests some parties with property interests in the contract before the decedent's death.[51] Thus it can be said that a survivor has a contractual interest in the property at the time of death, or, in the case where the surviving spouse is a life insurance beneficiary, that the property, previously owned by the decedent or a third party, "passed to the surviving spouse by reason of the decedent's death." Second, for the reasons that follow, we are satisfied that the legislative history of the elective share statute and the policy behind the wrongful death statute support treating wrongful death proceeds differently from life insurance and other contractual rights to payment.

44. The facts of this case provide a dramatic example of the application of these differing statutes of limitation. The time period in which Florian could have filed claims against the asbestos manufacturers and suppliers for his injury began to run pursuant to the ordinary discovery rule. *See John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031–32 (Alaska 2002). In contrast, the statute of limitations for Barbara's wrongful death claim, which was premised on the same asbestos injury, did not begin to run until the death occurred. That Florian's statute of limitations began to run possibly years before Barbara's reaffirms the independent nature of her claim.

45. AS 13.12.207(a)(1)(C).

46. *Connecticut Bank & Trust Co. v. United States*, 465 F.2d 760, 763 (2d Cir.1972).

47. *Id.*

48. *Id.*

49. AS 13.12.207. The comments to the revised UPC make clear to include within the augmented estate life insurance proceeds payable to the survivor, even if the life insurance contract is owned by another person, because the proceeds can rightly be considered property owned by the survivor at the time of decedent's death. *See* UNIF. PROBATE CODE § 2–207 cmt., exs. 29–30 (amended 1993), 8 U.L.A. 119–120 (1998).

50. AS 13.12.205(1)(D) (including value of decedent's nonprobate transfers to others, including life insurance benefits, within augmented estate). *See also* UNIF. PROBATE CODE § 2–205 cmt., ex. 8 (amended 1993), 8 U.L.A. 109 (1998).

51. *Cf. Reynolds v. Sisco Group, Inc.*, 70 P.3d 388, 392 (Alaska 2003) ("[t]he contractual right to payments [from a third party] certainly is something that 'may be the subject of ownership' so it is unquestionably property [of the estate].").

## 1. Legislative history

Alaska legislators looked to the Uniform Probate Code in revising Alaska's probate laws.[52] Yet a review of the UPC's commentary and of the legislative history of amendments to AS 13.12.203–.207 reveals no indication that wrongful death proceeds were intended to be included within the augmented estate as property of the surviving spouse.

The commentary to the UPC discusses thirty-four examples of property in the augmented estate,[53] nine of which specifically fall under the category of property owned by the surviving spouse at decedent's death under § 2–207.[54] Not one example includes or is analogous to an interest in wrongful death proceeds. Moreover, the examples contemplated under § 2–207 all represent contractual interests, such as life insurance policies or irrevocable inter vivos trusts, which are substantially different from an independent claim for damages like wrongful death that arises after the passing of the decedent.

The legislative history behind Alaska's adoption of its augmented estate provisions is likewise devoid of any reference to a surviving spouse's interest in wrongful death recovery.[55] The issues that were of primary concern to the Alaska Legislature were the inclusion of life insurance proceeds and of wealth held in nonprobate assets, such as retirement funds and joint tenancies.[56] There is no evidence that the legislature

contemplated wrongful death proceeds or the result sought by the appellees in this case.

Although it is difficult to determine legislative intent through omissions, we are satisfied that the lack of any mention of wrongful death proceeds within the augmented estate, either by the drafters of the UPC in their extensive commentary, or by Alaska legislators in their discussions of the proposed law, provides support for today's holding.

## 2. Policy behind wrongful death recovery

We also find that the policy behind wrongful death recovery militates against including the proceeds within the augmented estate and thereby offsetting the surviving spouse's inheritance under the elective share. Wrongful death recovery must not be viewed as a form of inheritance or as a property transfer from one spouse to another, or from a parent to a child. Rather, it is an action in tort with the primary purpose of compensating the spouse and any dependents for the losses that they have suffered as a result of the death.[57] Claimants may be awarded prospective inheritance, loss of support, loss of consortium, and other damages in order to make them whole for the harm caused to them by the "wrongful" death of a spouse or parent.[58] It is plainly unreasonable to use this restorative amount to offset a surviving spouse's statutorily authorized elective share.[59] We therefore conclude that any interests in or proceeds from a wrongful death claim are not included within the augmented

---

**52.** *See supra* nn. 17–19 and accompanying text.

**53.** *See* UNIF. PROBATE CODE §§ 2–205—2–207 cmts. (amended 1993), 8 U.L.A. 107–20 (1998).

**54.** *Id.* § 2–207 cmt. Eight of these examples consider the properties of life insurance policies and irrevocable inter vivos trusts. *Id.* The ninth considers a joint tenancy. *Id.*

**55.** *See* House Jud. Comm. File, H.B. 308; House Jud. Comm. Mins., H.B. 308 (Oct. 16, 1995); House Jud. Comm. Mins., H.B. 308 (Jan. 19, 1996); Senate Jud. Comm. Mins., H.B. 308 (Mar. 29, 1996); 1996 House Journal 2661.

**56.** The primary purpose of amending the definition of augmented estate was to address the problem of a decedent effectively disinheriting his or her spouse by purchasing life insurance

policies benefitting someone other than the surviving spouse. *See* House Jud. Comm. Mins., H.B. 308 (Oct. 16, 1995); *see also* House Jud. Comm. Mins., H.B. 308 (Jan. 19, 1996) (testimony of Bob Manly).

**57.** *In re Estate of Pushruk,* 562 P.2d 329, 331 (Alaska 1977).

**58.** AS 09.55.580(c); *see also Kulawik v. ERA Jet Alaska,* 820 P.2d 627, 636 (Alaska 1991) (loss of prospective inheritance). *See also supra* Part IV.B.

**59.** We also note the practical risks posed to the surviving spouse if wrongful death proceeds were included within the augmented estate, such as the risk of the probate court overvaluing an unlitigated claim and the risk that a debtor is fully or partially judgment-proof.

estate for the purposes of calculating the surviving spouse's elective share.

### D. The Superior Court on Remand Must Determine What Portion, If Any, of the Recovery Was Attributable to Survivorship Claims.

█ The above analysis regarding wrongful death claims does not apply to survivorship claims. Alaska Statute 09.55.570 permits all causes of action held by a person to survive that person's death, and allows the action to be pursued by the personal representatives of the estate. The survival action comes into existence at the time of injury and may compensate the victim only for the period between the time of injury and the time of death. Unlike wrongful death claims, survivorship claims are wholly derivative of the decedent's pre-existing causes of action and compensate the estate only for those injuries suffered by the decedent prior to the death; the claims do not compensate the survivors for their own harms.[60]

We have recognized that "[a]ny survivorship damages would become part of the decedent's estate."[61] We uphold this principle today. Survivorship damages may be sought by the personal representative for the benefit of the estate, not for the benefit of any particular survivor. Such a claim therefore resembles a wrongful death action only where the decedent is not survived by a spouse or dependent.[62] Thus, survivorship proceeds should be included within the decedent's net probate assets and, by extension, the augmented estate for the surviving spouse's elective share.

The record is unclear regarding what portion, if any, of the settlements with the asbestos manufacturers and suppliers can be attributed to survivorship claims. While the parties and even the superior court refer to the proceeds solely as wrongful death proceeds, the settlement agreements themselves suggest otherwise. One settlement released the defendant from "all claims for surviving personal injury, loss of consortium, or wrongful death." The other two settlement agreements purport to settle all wrongful death claims as well as all claims brought by Florian prior to his death. These agreements describe both the claims brought by Florian prior to death and the injuries suffered by him, in addition to the wrongful death injuries suffered by family members.

From this language, it may well be that some portion of the $945,000 in settlements compensated the estate for Florian's surviving causes of action. However, the settlement agreements and the remainder of the record give no clue as to what that portion might be. On remand, the superior court should determine what portion, if any, of the recovery under the settlement agreements is attributable to Florian's surviving claims, in distinction to the parties' wrongful death claims. That amount which is deemed survivorship claim recovery should be included in the augmented estate for the purposes of determining Barbara's elective share. However, that amount which is deemed wrongful death recovery should be excluded.

## V. CONCLUSION

Because wrongful death proceeds are not property owned by the surviving spouse at the time of the decedent's death, they should not be included within the augmented estate under the elective share statutes. We therefore REVERSE the superior court's decision to treat all of the settlement proceeds as part of the augmented estate. We REMAND for determination of what portion, if any, of the settlement is attributable to survivorship claims; only that amount may be included within the augmented estate.

---

**60.** *See* 2 DAN B. DOBBS, THE LAW OF TORTS § 295, at 805 (2001) ("In contrast to the wrongful death action, the survival action does not create a new claim for the benefit of survivors. Instead, it merely reverses the common law rule that a cause of action abates with the death of either party.").

**61.** *Horsford v. Estate of Horsford*, 561 P.2d 722, 727 n. 11 (Alaska 1977).

**62.** *See* AS 09.55.580(a); *supra* Part IV.B.